UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

**DENNIS SCOTT**,

    Plaintiff,

v.

**PAYCHEX INSURANCE AGENCY, INC.**,

    Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Paychex Insurance Agency, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 24] for failure to state a claim for relief, under Federal Rule of Civil Procedure 12(b)(6). Plaintiff, Dennis Scott, filed a Response [ECF No. 25], to which Defendant filed a Reply [ECF No. 28]. Plaintiff also filed a Notice of Supplemental Authority [ECF No. 29] regarding arguments raised in Defendant's Reply. (*See generally id.*). The Court has considered the Amended Complaint [ECF No. 21], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

### I. BACKGROUND

This case arises from an allegedly fraudulent or misleading Certificate of Insurance (the "COI") that Defendant issued to non-party James A. Jones, a general contractor. (*See generally* Am. Compl.; Mot., Ex. 1, COI [ECF No. 24-1]).[1] As described below, Jones later assigned to

---

[1] When a complaint refers to documents that are central to it and undisputed, a court may consider those documents for Rule 12(b)(6) purposes, and a "defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

Plaintiff any claims he may have against Defendant stemming from the COI. (*See* Am. Compl. ¶ 24). Plaintiff now asserts those assigned claims. (*See generally id.*).

In early 2018, Jones was retained to work on a construction project (the "Project"). (*See id.* ¶ 6). He then engaged non-party Central Florida Siding Pros, LLC ("CFSP") as a subcontractor to assist in the Project. (*See id.* ¶ 8, 14). Plaintiff was an employee of CFSP. (*See id.* ¶ 10).

As a general contractor, Jones was not required to "carry his own worker's compensation insurance." (*Id.* ¶ 7). Rather, under "Florida law, Jones was only required to confirm that each of his subcontractors carried their own worker's compensation as a condition of being retained to work on the Project." (*Id.*). To that end, he requested his subcontractors, including CFSP, provide evidence that they had worker's compensation insurance. (*See id.* ¶ 8). On February 6, 2018, Defendant, an insurance agent, issued the COI to Jones, stating that CFSP "had worker's compensation insurance with [non-party] NorGuard Insurance Company ("Norguard") through a policy with an effective date of April 29, 2017 and an expiration date of April 29, 2018." (*Id.* ¶ 9 (alteration added); *see also* COI).

The COI contains multiple disclaimers, including that it "confers no rights upon the certificate holder . . . and does not affirmatively or negatively amend . . . the coverage afforded by the polic[y][.]" (COI (alterations added)). Further, the COI only "certif[ies] that the [policy] ha[s] been issued to the insured [] for the policy period indicated, . . . [and] the insurance . . . is subject to all the terms, exclusions and conditions of [the] polic[y]." (*Id.* (alterations added)). Finally, the COI states that should the policy be cancelled before the expiration date listed in the COI, the failure to provide notice "shall impose no obligation or liability of any kind[.]" (*Id.* (alteration added)). Nevertheless, "Jones relied on the COI issued by Defendant and subcontracted with CFSP[.]" (Am. Compl. ¶ 10 (alteration added)).

"Unbeknownst to Jones, the COI was false and did not convey an accurate picture of CFSP's insurance situation[,]" because NorGuard would soon cancel the policy. (*Id.* ¶ 11 (alteration added)). In fact, despite the timing and representations of the COI, on January 23, 2018, Defendant had already notified NorGuard that CFSP had "fail[ed] to run payroll and pay premium," and so "NorGuard [] issue[d] a notice of cancellation the following day, January 24, 2018, with an effective date of February 10, 2018." (*Id.* (alterations added)). Even though "Defendant [was] fully aware that CFSP's insurance had been cancelled and would be null in a few days . . . it sent Jones the COI indicating the opposite, that CFSP had insurance coverage and that the coverage would be in place until the end of April 2019." (*Id.* ¶ 12 (alterations added)).

On April 14, 2018, while working on the Project, Plaintiff suffered extensive injuries "ultimately result[ing] in a below-the-knee amputation of his left leg." (*Id.* ¶ 16 (alteration added); Resp. 5 n.2)).[2,3] Consequently, Plaintiff initiated worker's compensation proceedings (*see id.* ¶ 18)[4] and filed his initial Petition for Benefits against CFSP, NorGuard, and Jones on August 24, 2018 (*see* Mot., Ex. 2, Pet. [ECF No. 24-2]). On August 31, 2018, NorGuard responded to the Petition with its denial because there was no "coverage for th[e] date of injury." (Mot., Ex. 3, Resp. to Pet. [ECF No. 24-3] 1 (alteration added)).[5]

---

[2] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears in the header on all filings.

[3] Plaintiff alleges he "began working on the Project on April 14, 2022[,]" rather than 2018 (Am. Compl. ¶ 15 (alteration)); but in his Response, he clarifies that this is an "obvious" "typo" (Resp. 5 n.2).

[4] In Florida, worker's compensation proceedings are adjudicated before the Office of the Judges of Compensation Claims, an administrative court. *See generally* Fla. Stat. § 440. Findings and determinations made by the Judge of Compensation Claims (the "JCC") may then be appealed to the First District Court of Appeal. *See id.* § 440.271.

[5] Jones also filed his own Petitions for Benefits against CFSP, NorGuard, and Defendant, but the JCC dismissed those Petitions as improper. (*See generally* Mot., Ex. 4, JCC Orders [ECF No. 24-4] 1–4). Jones again attempted to assert his claims against Defendant under Florida Statute section 440.24 — per the JCC's

3

At the close of the worker's compensation proceedings, the JCC ultimately determined there was no worker's compensation available and Jones was responsible for providing those benefits to Plaintiff. (*See* Am. Compl. ¶ 20). Plaintiff and Jones unsuccessfully cross-appealed the findings. *See generally Scott v. James A. Jones Constr. Co.*, 315 So. 3d 767, 768 (Fla. 1st DCA 2021), *reh'g denied* (Apr. 19, 2021). Relevant here, *Scott* affirmed the "finding that any reliance by Jones on the COI was not reasonable" because it was "supported by competent, substantial evidence and makes enforcement unnecessary to avoid injustice." *Id.* at 769.

After that decision, "Jones and Plaintiff entered into a settlement agreement" in which Jones assigned to Plaintiff "all claims, rights, causes of action, or choses in action that Jones had against Defendant[.]" (Am. Compl. ¶ 24 (alteration added)). Plaintiff, wielding the claims assigned to him by Jones, now seeks to hold Defendant liable for issuing a COI that omitted the true status of CFSP's insurance policy with NorGuard. (*See generally id.*).

Plaintiff alleges four claims for relief arising from Defendant's "misrepresent[ation] [of] the status of the insurance policy" through the COI. (*Id.* ¶ 13 (alterations added)). First, Plaintiff asserts that Defendant fraudulently misrepresented the material fact of the expiring insurance coverage when it provided the COI. (*See id.* ¶¶ 26–34). Second, Plaintiff alleges that Defendant negligently misrepresented this material fact and "should have known the statement was false." (*Id.* ¶ 38; *see id.* ¶¶ 35–42). Third, Plaintiff asserts Defendant negligently provided "inaccurate and misleading[]" information in the COI. (*Id.* ¶ 46 (alteration added); *see also id.* ¶¶ 43–48). Finally, Plaintiff asserts that Defendant "negligently supplied" the "false and misleading information for the guidance of" others — namely, Jones. (*Id.* ¶ 51; *see also id.* ¶¶ 49–58).

---

directive — but was again denied because Defendant was not encompassed within the statute. (*See id.* 16–17).

Defendant moves to dismiss the Amended Complaint for failing to state a single claim for relief.  (*See generally* Mot.).

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).  A complaint's "well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks*, 116 F.3d at 1369 (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III.  DISCUSSION

Defendant urges the Court to dismiss all four Counts of the Amended Complaint as time-barred under the applicable statute of limitations.  (*See* Mot. 6–8).  Defendant further argues that — because of the determinations made by the JCC and First District Court of

Appeal — Plaintiff cannot establish the "justifiable reliance" necessary to support his negligent misrepresentation claim (Count II) or his negligent-supply-of-information claim (Count IV). (*Id.* 9 (alterations added)). Finally, Defendant argues that Plaintiff's fraud claim (Count I) fails to satisfy both the elements of fraud under Florida law and the pleading standards of Federal Rule of Civil Procedure 9(b). (*See id.* 10–11).

The Court disagrees with Defendant's first two arguments. First, Defendant misinterprets when Plaintiff's claims began to accrue, and the claims are not time-barred under the applicable statute of limitations. Next, the findings of the JCC and *Scott*, 315 So. 3d at 767, do not preclude Plaintiff's assertion of justifiable reliance in Counts II and IV. But the Court agrees with Defendant's last argument — Plaintiff fails to comply with Rule 9(b) in Count I. The Court analyzes each argument separately.

A. **Plaintiff's claims are not time-barred.**

Defendant first argues that all four claims are barred under Florida's four-year statute of limitations for suits asserting negligence or fraud. (*See* Mot. 6–8); *see generally* Fla. Stat. § 95.11(3).[6] According to Defendant, because the harm Plaintiff suffered — Jones's "liability for [] [b]enefits[]" (Am. Compl. ¶ 23 (alterations added)) — stems from NorGuard's denial of coverage, the statute of limitations began to run when Jones was informed by NorGuard of that denial on August 31, 2018 (*see* Mot. 7; Resp. to Pet. 1). Plaintiff, by contrast, points to *Blumberg v. USAA Casualty Insurance Company*, arguing that an "action against an insurance agent does

---

[6] The parties do not dispute the applicability of Florida's statute of limitations, which "begins to run from the time the cause of action accrues." *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 778 (11th Cir. 2015), *certified question answered*, 202 So. 3d 859 (Fla. 2016), *opinion after certified question answered*, 844 F.3d 944 (11th Cir. 2016) (citation omitted). Rather, the parties' dispute turns on when the cause of action accrued, which occurs "when the last element constituting the cause of action occurs." *Id.* (quoting Fla. Stat. § 95.031(1)). More specifically, the parties dispute when Plaintiff — as the wielder of Jones's claims — suffered damage or harm from the COI's misrepresentations. (*See* Mot. 6–8; Resp. 2–4).

6

not start to run until the underlying coverage proceeding against the insurer is finalized." (Resp. 3 (citing 790 So. 2d 1061, 1065 (Fla. 2001))). Here, the underlying JCC and DCA proceedings concluded in the spring of 2021. *See generally Scott*, 315 So. 3d at 767. While Defendant attempts to differentiate this case from *Blumberg* (*see* Reply 5–8), Plaintiff has the better argument.

To start, a review of *Blumberg* proves instructive. In that case, an insurance agent allegedly told the insured that coverage was available under a certain insurance policy. *See* 790 So. 2d at 1063. The insured subsequently suffered a loss and sought coverage based on the agent's representations but was denied by the insurer; the insured sued the insurer, and the trial court ultimately determined there was no coverage. *See id.* The insured then sought to bring a claim against the insurance agent, and the Florida Supreme Court held that the insured could bring suit against the insurance agent only once the insured "incurs damages at the conclusion of the related or underlying judicial proceedings[.]" *Id.* at 1065 (alteration added). Should the related or underlying proceedings still be ongoing, a defendant-insurance agent "can move for an abatement or stay of the claim on the ground that the negligence/malpractice action has not yet accrued." *Id.* (footnote call number omitted).

Subsequent cases have confirmed *Blumberg*'s approach of treating claims against insurance agents — when based on some defect in the underlying insurance coverage — as accruing only once a final determination on the denial of insurance coverage has been reached. *See Diplomat Golf Course, Venture, LLC v. Indian Habor Ins. Co.*, No. 19-61275-Civ, 2020 WL 12182197, at *3 (S.D. Fla. Apr. 17, 2020) ("The holding in *Blumberg* is premised on the idea that the negligence claim is premature and . . . that such a claim might never exist if the plaintiff succeeds in its suit against its insurers." (alteration added)); *N. Assurance Co. of Am. v. Sante Teo, Inc.*, No. 11-24392-Civ, 2012 WL 12868391, at *5 (S.D. Fla. Apr. 4, 2012) ("*Blumberg* dictates

7

that only when there has been a determination as to coverage, or a lack thereof, will [the plaintiff's] cause of action against [the insurance agent] begin to accrue." (alterations added)); *Goetz v. Metro. Life Ins. Co.*, No. 05-61323-Civ, 2005 WL 8154691, at *5 (S.D. Fla. Nov. 25, 2005) ("The *Blumberg* court essentially holds that an insured has no claim against his insurance agent for negligence until he has proven damages from his relationship with the insurer.").

Faced with this case law, Defendant first chooses to wholly ignore *Blumberg*, and instead provides a technically correct, if largely unhelpful, general recitation of Florida law concerning the statute of limitations. (*See* Mot. 6–8 (discussing four-year statute of limitations under Florida law)). Defendant insists that the statute of limitations began to run on Plaintiff's claims once NorGuard informed him and Jones that there was no coverage — the latest of these dates would be August 31, 2018, when NorGuard filed its Response to Plaintiff's Petition. (*See id.* 7; Resp. to Pet. 1). But Defendant makes no attempt in its Motion to reconcile its argument with the language in *Blumberg* indicating that a cause of action against the insurance agent accrues only at the conclusion of the underlying proceedings on the insurance policy at issue. *See* 790 So. 2d at 1065.

It is not until Plaintiff discusses *Blumberg* (*see* Resp. 2–4), that Defendant attempts to distinguish the case (*see* Reply 5–8). Defendant argues that *Blumberg* only addresses cases where an insured seeks to sue the insurance agent for a failure to procure coverage; as opposed to this case, where — rather than a failure to procure coverage — Plaintiff alleges the agent fraudulently or negligently misrepresented the status of the underlying insurance. (*See id.*; *see generally* Am. Compl.). The Court fails to appreciate the significance of this distinction.

As Plaintiff recognizes, he could hardly claim fraud or negligence regarding Defendant's representations if coverage was actually available. (*See* Notice ¶ 2). Just as in *Blumberg*, the harm Plaintiff suffered here — the lack of coverage — could materialize only once the underlying

proceedings determined coverage was unavailable. *See* 790 So. 2d at 1065. This determination did not occur until the JCC's denial of coverage was affirmed in *Scott*. *See Scott*, 315 So. 3d at 770.

Even the case law Defendant cites appears to undercut its own position. Take, for instance, *Kelly v. Lodwick*. (*See* Reply 8 (discussing 82 So. 3d 855, 858 (Fla. 4th DCA 2011))). In *Kelly*, it was undisputed that an insured lacked coverage despite having relied on an insurance agent's representations. *See* 82 So. 3d at 855–57. Thus, the court found the cause of action against the agent accrued when the insured was forced to begin defending an action by an employee whose injury and damages were not covered by the policy. *See id.* at 858–59. According to Defendant, this means that Plaintiff's "causes of action accrued when damages from the alleged misrepresentations of Defendant manifested and Jones incurred legal fees." (Reply 8 (citing *Kelly*, 82 So. 3d at 858)).

Defendant misunderstands *Kelly*, where there was no underlying proceeding concerning coverage which might impact the moment when damages accrued. *See* 82 So. 3d at 859 n.2. In other words, *Kelly* "affirms the notion that a cause of action against the agent accrues only on an established lack of coverage, *combined* with actual resulting damages." *N. Assurance Co. of Am.*, 2012 WL 12868391, at *5 (applying *Kelly* and *Blumberg*; emphasis added). And "until it is first decided that there is no coverage[,]" it cannot be known whether a claim regarding that lack of coverage exists against the agent. *Id.* (alteration added).

Defendant's final, belated argument that *Blumberg* only applies to negligence claims also fails. (*See* Reply 8 n.1 (discussing *Belaire at Boca, LLC v. Ass'ns Ins. Agency, Inc.*, No. 06-80887-Civ, 2007 WL 2177214, at *4 (S.D. Fla. July 26, 2007))). In *Belaire*, the plaintiff sued both insurers and agents for a lack of coverage. *See* 2007 WL 2177214, at *1. The defendants moved

to dismiss the claims against the agents as not ripe until the underlying proceedings against the insurers were finalized, citing *Blumberg*. *See id.* at *5. The court rejected that assertion and refused to dismiss or stay the claims against the agents because, unlike in *Blumberg*, the plaintiff in *Belaire* had not asserted inconsistent theories of liability and there was no underlying proceeding to determine coverage. *See id.* Defendant's misplaced reliance aside, *Belaire* simply has little to say about *this* case, where Plaintiff sues only the agent; the underlying proceeding has concluded; and there is no suggestion that Plaintiff has advanced inconsistent theories of liability. (*See generally* Am. Compl.).

At bottom, *Blumberg* dictates that Plaintiff's claims against Defendant accrued only upon the final determination that there was no coverage in *Scott*. *See Scott*, 315 So. 3d at 770. Accordingly, Plaintiff's claims are not barred by Florida's statute of limitations.

**B.    The underlying proceedings do not bar Plaintiff's current reliance claims.**

Defendant next argues that Plaintiff's claims of negligent misrepresentation in Count II (*see* Am. Compl. ¶¶ 35–42), and information-negligently-supplied-for-the-guidance-of-others in Count IV (*see id.* ¶¶ 49–58), should be dismissed because Jones could not have justifiably relied on the COI's statements. (*See* Mot. 9–10).[7] Defendant primarily focuses on the prior determination and statements made by the JCC and First District Court of Appeal in the underlying proceedings, which found that Jones could not have reasonably relied on the COI. (*See id.* (discussing *Scott*, 315 So. 3d at 769–70)).

According to Plaintiff, reliance is "a factual issue reserved for the jury[.]" (Resp. 6 (alteration added)). Furthermore, Plaintiff contests the meaning and import of the JCC's and First

---

[7] Under Florida law, both claims require a plaintiff to have justifiably relied on the misrepresentation at issue. *See Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 309 (Fla. 1st DCA 2011) (negligent misrepresentation); *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337–39 (Fla. 1997) (information negligently supplied for the guidance of others).

10

District Court of Appeal's decisions in the underlying proceedings, which focused on the relationship and claims between Jones and NorGuard, not Defendant. (*See id.* 6–8). The Court agrees with Plaintiff — the reliance determination in the underlying proceedings does not impair Plaintiff's allegations of justifiable reliance in this case.

To begin, it proves helpful to review what the JCC and First District Court of Appeal did, and did not, determine with respect to the issue of reliance. The JCC held that Jones could not hold NorGuard liable on a theory of promissory estoppel. (*See* JCC Orders 32–35). Promissory estoppel requires "(1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced." *Scott*, 315 So. 3d at 769 (citations and quotation marks omitted). According to the JCC, promissory estoppel did not apply against NorGuard because the COI contained prominent disclaimers and because of Florida law regarding the inability of a COI, issued by an insurance agent, to alter an existing insurance contract between an insurer and an insured. (*See* JCC Orders 32–35). Thus, promissory estoppel did not prevent NorGuard from denying coverage. (*See id.*). These findings were then affirmed, based on the "competent, substantial evidence" present in the record. *Scott*, 315 So. 3d at 769.

This decision did not address the claims Plaintiff might have against Defendant. Indeed, the JCC did not have jurisdiction to consider claims against Defendant (*see* JCC Orders 16), and the JCC queried whether holding NorGuard liable for Defendant's COI would even be appropriate (*see id.* 33 (stating that it was "putting aside the question of whether the COI generated by [Defendant] is a representation by NorGuard . . . ." (alterations added)). While the underlying proceedings determined that Jones could not have relied on the COI — issued by Defendant and not NorGuard — to establish a claim against NorGuard, that has little to say regarding whether

11

Plaintiff can demonstrate reliance in a claim against Defendant arising from Defendant's alleged misrepresentations. (*See* Am. Compl. ¶¶ 9–12).

In other words, the Court agrees with Plaintiff that the underlying "proceeding[s] w[ere] limited to the issue of whether coverage existed, whereas this separate [] lawsuit focuses on [Defendant]'s misrepresentations[.]" (Resp. 6 (alterations added)). The JCC and the First District Court of Appeal's decisions do not bar Plaintiff's claims in Counts II and IV.[8]

Because the underlying proceedings do not provide a ground to dismiss Counts II or IV, Defendant's remaining arguments concerning Counts II and IV quickly fail. It is well established that "reliance is typically left to the trier of fact." *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 173 (Fla. 4th DCA 1994), *reh'g denied, clarification granted* (Apr. 4, 1995) (citation and footnote call number omitted); *see also Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, No. 13-23998-Civ, 2017 WL 11103938, at *17 (S.D. Fla. June 26, 2017) ("The Court declines to [make findings of fact determining reliance] at the pleading stage." (alteration added)). And Plaintiff alleges Jones's reliance on the misrepresentations made in the COI. (*See* Am. Compl. ¶¶ 40, 54; *see also* COI (listing policy coverage dates)). This should end the matter.

Undeterred, Defendant argues that "Plaintiff cannot establish 'reliance' based on the clear and unambiguous language of the COI, West's Florida Construction Law Manual, . . . [and] Jones' own testimony." (Reply 9–10 (alterations added)). Defendant acknowledges these arguments merely restate the rationale of the underlying proceedings (*see id.*); they are thus inapplicable for the reasons already described. But even when considered, these arguments fail to persuade.

---

[8] Plaintiff accuses Defendant of attempting to utilize the doctrine of res judicata in order to apply the decisions of the underlying proceedings to this case. (*See* Resp. 8–10). Defendant expressly disclaims the applicability of the doctrine to its Motion. (*See* Reply 9). Consequently, the Court does not consider the issue; regardless, as an affirmative defense, "res judicata is rarely a matter that is properly resolved on a motion to dismiss." *Holt v. Brown's Repair Serv., Inc.*, 780 So. 2d 180, 181 (Fla. 2d DCA 2001) (citation omitted).

First, any reliance on the COI's disclaimers would require the Court to weigh those disclaimers against Plaintiff's express allegations of reliance on the COI. (*Compare* COI *with* Am. Compl. ¶¶ 40, 54). The Court declines to engage in this fact-finding on a motion to dismiss. *See Kipnis*, 2017 WL 11103938, at *17. Second, the Court similarly declines to consider Defendant's passing reference to "Jones' [] testimony" (Reply 10 (alterations added)), which is neither alleged in the Amended Complaint nor incorporated in the pleading. Finally, the *Construction Law Manual* Defendant identifies details the effects that COIs have on insurers and their policies, *see* 8A Fla. Prac., *Constr. Law Manual* § 20:3 (2022-2023 ed.), which is precisely why it was used to determine the potential liability of NorGuard in the underlying proceedings (*see* JCC Orders 33). That provision says nothing regarding separate claims against an insurance agent for misrepresentations made in the COI. *See generally* 8A Fla. Prac., *Constr. Law Manual* § 20:3.

In short, the question of reliance is clearly "an issue of fact" that should not be resolved on a motion to dismiss. *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 652–53 (Fla. 3d DCA 2006) (collecting cases). Accordingly, dismissal of Counts II and IV is not warranted.

C. **Plaintiff does not satisfy Rule 9(b).**

This leaves Defendant's final argument, directed to Count I. (*See* Mot. 10–11). In Count I, Plaintiff asserts a claim of fraudulent misrepresentation. (*See* Am. Compl. ¶¶ 26–34). Defendant argues that the claim should be dismissed both for failing to state a claim for relief under Florida law, as well as for failing to comply with Federal Rule of Civil Procedure 9(b). (*See* Mot. 10–11). Plaintiff insists that he has pleaded "a sufficiently detailed cause of action for fraud." (Resp. 11). The Court agrees with Defendant in part — Plaintiff's fraud claim does not comply with Rule 9(b)'s pleading requirements.

13

"Claims that sound in fraud must comply not only with the plausibility standard articulated in *Twombly* and *Iqbal*, but also the heightened pleading requirements of Rule 9(b)." *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (citation omitted). As the Eleventh Circuit has recently explained,

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id.* (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)).

Defendant contests the last element, arguing Plaintiff "has not, and cannot, allege that Defendant, an insurance agent, gained any benefit whatsoever from Jones allegedly relying on the [] COI[.]" (Mot. 11 (alterations added)). Indeed, Plaintiff does not provide any allegations regarding Defendant's gain. (*See generally* Am. Compl.). In this regard, Plaintiff insists his pleading is sufficient because Defendant's gain is "not an element that Plaintiff is required to prove at trial to succeed on a fraud claim under Florida law." (Resp. 12 (citations omitted; emphasis in original removed)).

Admittedly, Plaintiff is correct that, as a matter of *state law*, he need not provide proof of Defendant's gain in order to succeed on the merits of his claim. *See Specialty Marine*, 66 So. 3d at 309 (listing elements of fraudulent misrepresentation claim). But the requirement that Plaintiff allege what Defendant obtained as a consequence of its fraud comes from *federal pleading* obligations. *See Young*, 57 F.4th at 875; *Lee v. Frost*, No. 21-20885-Civ, 2021 WL 3912651, at *4 (S.D. Fla. Sept. 1, 2021) ("A party asserting a fraud-based claim must [] allege . . . what the defendants obtained as a consequence of the fraud." (alterations added; citations omitted)).

14

Instead of addressing the omission in his pleading, or otherwise remedying the deficiency, Plaintiff instead argues that he need not comply with Rule 9(b). (*See* Resp. 12). He further argues that this pleading requirement is an erroneous imposition of the elements of a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO") into Rule 9(b). (*See id.* 12–13); *see also* 18 U.S.C. § 1692. But Plaintiff ignores that this pleading requirement is regularly applied to all manner of fraud claims in federal court, not merely RICO cases. *See, e.g.*, *Young*, 57 F.4th at 875 (applying the pleading requirement to consumer fraud claims); *Lee*, 2021 WL 3912651, at *4 (applying pleading requirement to securities fraud claims); *Giuliani v. NCL (Bahamas) Ltd.*, No. 1:20-cv-22006, 2021 WL 2573133, at *3 (S.D. Fla. June 23, 2021) (applying pleading requirement to misleading advertising claims).

Plaintiff provides no justification as to why his fraudulent misrepresentation claim deserves different treatment — certainly other courts have expressly rejected the RICO-based differentiation Plaintiff attempts to draw. *See In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 319 F. Supp. 2d 1318, 1332 (S.D. Fla. 2004) ("Plaintiffs alleged . . . that the Circuit Court decision in [*Brooks*, 116 F.3d at 1371] cited by [the defendant] actually concerns RICO, and not fraud allegations. However, both *Brooks* and [*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1209 (11th Cir. 2001)] clearly discuss fraud when listing the elements necessary to satisfy Rule 9(b)." (alterations added)).

In short, Rule 9(b) requires Plaintiff to allege what Defendant obtained by its fraud; he does not. Therefore, the fraud claim must be dismissed.[9]

---

[9] Because Count I does not satisfy this requirement of Rule 9(b), the Court does not address Defendant's separate argument that Plaintiff fails to adequately allege the necessary *mens rea* for his fraud claim. (*See* Mot. 10).

15

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

## IV. CONCLUSION

In sum, Plaintiff's claims are not time-barred, and the findings made in the underlying proceedings do not bar his current assertions of justifiable reliance. But Plaintiff does not sufficiently plead his fraud claim under Rule 9(b). Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion **[ECF No. 24]** is **granted in part and denied in part** as follows:

1. The Motion is **GRANTED** as to Count I. That Count is dismissed without prejudice and without leave to amend given the deadline for amending the pleadings has long since passed, Plaintiff has already been allowed one amendment, and Plaintiff does not request leave to amend. (*See* Nov. 15, 2022 Order Setting Trial and Pre-Trial Schedule [ECF No. 11] 1; Dec. 9, 2022 Order [ECF No. 20]; *see generally* Resp.; Notice).

2. The Motion is **DENIED** as to Counts II, III, and IV.

3. Defendant has until and including **March 23, 2023** to file its answer to the remaining Counts of Plaintiff's Amended Complaint **[ECF No. 21]**.

**DONE AND ORDERED** in Miami, Florida, this 10th day of March, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record