UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

DENNIS SCOTT,

      Plaintiff,

v.

PAYCHEX INSURANCE
AGENCY, INC.,

      Defendant.

_____/

**ORDER**

    **THIS CAUSE** came before the Court on Plaintiff, Dennis Scott's Motion for Partial Summary Judgment [ECF No. 74], and Defendant, Paychex Insurance Agency, Inc.'s Motion for Final Summary Judgment [ECF No. 78].  Plaintiff and Defendant filed their respective Responses (*see* [ECF Nos. 84, 88]), followed by Replies (*see* [ECF Nos. 93, 97]).  The Court has carefully considered the record, the parties' written submissions,[1] and applicable law.  For the following reasons, Plaintiff's Motion is granted in part and denied in part, and Defendant's Motion is denied.

---

[1] The parties' factual submissions include Plaintiff's Statement of Material Facts in Support of its [sic] Motion for Partial Summary Judgment ("Pl.'s Mot. SOF") [ECF No. 75]; Defendant's Response to Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment (Def.'s Resp. SOF") [ECF No. 89]; Plaintiff's Reply Statement of Material Facts in Support of its [sic] Motion for Partial Summary Judgment (Pl.'s Reply SOF") [ECF No. 94]); Defendant's Statement of Undisputed Material Facts in Support of Motion for Final Summary Judgment ("Def.'s Mot. SOF") [ECF No. 79]); Plaintiff's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Resp. SOF") [ECF No. 85]; and Defendant's Reply Statement of Material Facts ("Def.'s Reply SOF") [ECF No. 96].

The statements of facts are questionably compliant (at best) with the Local Rules.  *See generally* Local Rule 56.1.

# I. BACKGROUND

This case arises from an allegedly fraudulent or misleading Certificate of Insurance (the "COI") that Defendant issued to non-party James A. Jones, a general contractor. (*See generally* Second Am. Compl. ("SAC") [ECF No. 43]; Pl.'s Mot. SOF, Ex. E, COI [ECF No. 75-5]). As described below, Jones later assigned to Plaintiff any claims it might have against Defendant stemming from the COI. (*See* Def.'s Mot. SOF ¶ 7). In this action, Plaintiff asserts those assigned claims. (*See generally* SAC).

By way of background, in early 2018, Jones — the general contractor on a construction project (the "Project") — engaged the services of non-party Central Florida Siding Pros, LLC ("CFSP") as a subcontractor on the Project. (*See* Def.'s Mot. SOF ¶ 5). Jones required proof of workers' compensation insurance from subcontractors in the form of certificates of insurance verifying the subcontractor's insurance coverage. (*See id.* ¶ 22).[2] General contractors may require these certificates as a method of verifying a subcontractor's insurance status. (*See, e.g.*, Def.'s Reply SOF ¶ 63).

CFSP had a workers' compensation policy issued by non-party NorGuard, an insurer. (*See* Def.'s Mot. SOF ¶ 8). CFSP obtained the policy through Defendant, an insurance agent. (*See id.* ¶ 3). At the time the policy was obtained, the coverage period was April 29, 2017 through April 29, 2018. (*See id.*). On February 6, 2018, Defendant issued the COI to Jones, verifying CFSP's insurance status and stating the coverage period was April 29, 2017 through April 29, 2018. (*See id.* ¶ 24). The COI also contained multiple disclaimers regarding the language and information it

---

[2] The parties dispute the extent to which Jones relied on the COI in its determination to retain CFSP on the Project. (*Compare* Pl.'s Mot. SOF ¶ 5 *with* Def.'s Resp. SOF ¶ 5).

provided.  (*See generally* COI).  After receiving the COI, Jones did nothing further to verify the information regarding CFSP's insurance.  (*See* Def.'s Mot. SOF ¶ 41).[3]

At the time the COI was issued, CFSP's workers' compensation insurance policy was in jeopardy.  (*See id.* ¶¶ 11, 16; Pl's Resp. SOF ¶ 11).  In short: under the terms of CFSP's coverage, CFSP was to run payroll and pay its insurance premiums through Defendant.  (*See* Def.'s Mot. SOF ¶ 11).  Should CFSP fail to pay its premiums, Defendant was required to notify NorGuard. (*See id.* ¶ 9).  Further, Defendant knew that reporting this information to NorGuard might "result in [CFSP's] loss of coverage and/or non–renewal of coverage."  (*Id.* (alteration added; citations omitted)).

Defendant was also aware that once it notified NorGuard of CFSP's noncompliance, NorGuard would likely soon cancel the policy.  (*See id.* ¶ 11; Pl.'s Resp. SOF ¶ 11).  How "soon" that cancellation could occur, as well as how "aware" Defendant was of this possibility, are disputed.  (*Compare* Def.'s Mot. SOF ¶ 11 *with* Pl.'s Resp. SOF ¶ 11).

As of January 16, 2018, CFSP had failed to run payroll and pay its premiums, and on January 23, 2018, Defendant informed NorGuard of CFSP's noncompliance.  (*See* Def.'s Mot. SOF ¶ 16).  Thus, on January 24, 2018, NorGuard sent a Notice of Cancellation to CFSP, indicating the policy coverage would expire on February 10, 2018.  (*See id.* ¶ 19).  The parties dispute when Defendant in fact obtained knowledge of this pending expiration date.  (*Compare id. with* Pl.'s Resp. SOF ¶ 18).  The parties also dispute the extent to which Defendant can monitor the status of policies — like CFSP's at the time — which are pending cancellation, and whether Defendant may include that information in issued certificates.  (*See, e.g.*, Pl.'s Resp. SOF ¶ 30).

---

[3] Defendant claims there are certain actions Jones might have taken to investigate the COI (*see* Def.'s Mot. SOF ¶¶ 38, 43–46); according to Plaintiff, some of these options were not available to Jones (*see* Pl.'s Resp. SOF ¶ 38).

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

Despite the pending cancellation, the COI stated that CFSP's insurance would run through April 29, 2018. (*See* COI). The policy was cancelled on February 10, 2018. (*See* Def.'s Mot. SOF ¶ 20). On April 24, 2018, Plaintiff was injured while working on the Project. (*See id.* ¶ 52).

In the ensuing workers' compensation proceedings,[4] the JCC determined that, at the time of the injury, CFSP employed Plaintiff; CFSP did not have workers' compensation insurance; Jones was to be considered Plaintiff's employer; and Jones did not carry the required workers' compensation coverage for non-lease employees — making Jones liable for Scott's injuries.[5] (*See id.* ¶ 54; *compare* Pl.'s Resp. SOF ¶ 64 *with* Def.'s Reply SOF ¶ 64; *see also* Pl.'s Mot. SOF, Ex. A, JCC Compensation Order [75-1] 25).[6] Following the JCC's Compensation Order, Jones and Plaintiff entered a joint stipulation, approved by the JCC, which stated there were $1.85 million in damages to Plaintiff, for which Jones was liable. (*See* Def.'s Mot. SOF ¶ 59; Pl.'s Resp. SOF ¶ 59). After the stipulation's approval, Jones and Plaintiff settled their dispute. (*See* Def.'s Mot. SOF ¶ 7). By the terms of their settlement, Jones assigned to Plaintiff all claims Jones might have against Defendant. (*See id.*).

Plaintiff alleges four claims for relief arising from Defendant's "misrepresent[ation] [of] the status of the insurance policy" on the COI. (SAC ¶ 16 (alterations added)). First, Plaintiff asserts that Defendant fraudulently misrepresented the material fact of the expiring insurance

---

[4] In Florida, workers' compensation proceedings are adjudicated before the Office of the Judges of Compensation Claims, an administrative court. *See generally* Fla. Stat. § 440. Findings and determinations made by a Judge of Compensation Claims (the "JCC") may then be appealed to the Florida First District Court of Appeal. *See id.* § 440.271.

[5] Despite the prior JCC findings, the parties dispute whether Plaintiff, at the time of the accident, was in fact employed by Jones and CFSP or by some other entity. (*Compare* Def.'s Resp. SOF ¶ 20 *with* Pl.'s Reply SOF ¶ 20; *see also* Def.'s Mot. SOF ¶ 52; Pl.'s Resp. SOF ¶ 52).

[6] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

4

coverage when it provided the COI.  (*See id.* ¶¶ 35–43).  Second, Plaintiff alleges that Defendant negligently misrepresented this material fact and "should have known the statement was false." (*Id.* ¶ 47; *see also id.* ¶¶ 44–51).  Third, Plaintiff asserts Defendant negligently provided "inaccurate and misleading" information in the COI.  (*Id.* ¶ 55; *see also id.* ¶¶ 52–57).  Finally, Plaintiff asserts that Defendant "negligently supplied" the "false and misleading information for the guidance of" others — namely, Jones. (*Id.* ¶ 60; *see also id.* ¶¶ 58–67).

Both parties now move for summary judgment in their favor on multiple issues.  (*See generally* Pl.'s Mot.; Def.'s Mot.).

## II.  LEGAL STANDARD

Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court draws all reasonable inferences in favor of the party opposing summary judgment.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing the Court there is insufficient evidence to support the non-moving party's case.  *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015).  "Once

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (alteration added; quotation marks omitted; citing Fed. R. Civ. P. 56(c)(1)).

### III. DISCUSSION

Plaintiff argues that the Court should grant partial summary judgment in his favor on the reliance element of his claims. (*See* Pl.'s Mot. 4–6). Plaintiff also seeks summary judgment on all 34 of Defendant's affirmative defenses. (*See id.* 6–18; Am. Answer and Affirmative Defenses 10–18 (hereinafter "Aff. Defs.")).[7] For its part, Defendant asks the Court to grant summary judgment in its favor on all of Plaintiff's claims. (*See generally* Def.'s Mot.).

While there are some areas of overlap, the parties mostly talk past one another with their many arguments. (*See generally* Pl.'s Mot.; Def.'s Mot). The Court addresses each Motion separately and notes the overlapping areas as necessary.

#### a.    <u>Plaintiff's Claims</u>

The Court begins by reviewing the elements of each of Plaintiff's four causes of action: fraudulent misrepresentation, negligent misrepresentation, negligence, and information negligently supplied for the guidance of others. (*See* SAC ¶¶ 35–67).[8] Under Florida law, the elements of a fraudulent misrepresentation claim are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance

---

[7] The Court references the affirmative defenses by their individual numbering in Defendant's Amended Answer and Affirmative Defenses.

[8] It is undisputed that Florida law governs this diversity action. *See Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001) ("A federal court sitting in diversity must apply state substantive law." (citations omitted)).

on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citation, quotation marks, and emphasis omitted).

The elements of a negligent misrepresentation claim are the same as a fraudulent misrepresentation claim, except a negligent misrepresentation does not require knowledge that the representation is false; a party can prevail on a negligent misrepresentation claim by showing that the representor either "knew the statement was false when it made the statement or made the statement knowing it was without knowledge of its truth or falsity[.]" *Copans Motors, Inc. v. Aaron*, No. 06-60168-Civ, 2007 WL 9700970, at *3 (S.D. Fla. Feb. 9, 2007) (alteration added; citations omitted).

For a claim of ordinary negligence, Plaintiff must demonstrate (1) Defendant's "duty, or obligation . . . to conform to a certain standard of conduct, for the protection of others against unreasonable risks[;]" (2) Defendant's "breach" of that duty by failing to conform to the standard required; (3) Plaintiff's injury being actually and proximately caused by the breach; and (4) Plaintiff suffered harm, in the form of damages, from the injury. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (alteration added; citation omitted).

Finally, as to Plaintiff's information-negligently-supplied-for-the-guidance-of-others claim, Florida has adopted the definition and elements found in Section 552 of the Restatement (Second) of Torts. *See Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337 (Fla. 1997). The claim is described as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplie[d] false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Principal Life Ins. Co. v. Mayer for Mignon Kopel Life Ins. Tr.*, No. 09-20244-Civ, 2009 WL

10668947, *5 (S.D. Fla. Dec. 15, 2009) (alteration added; quoting Restatement (Second) Torts § 552).

      **b.**    <u>**Plaintiff's Motion**</u>

      The Court begins with Plaintiff's Motion.  Plaintiff asks for partial summary judgment on the question of Jones's reliance on the COI — whether it was reasonable or not — as well as on all of Defendant's affirmative defenses.  (*See generally* Pl.'s Mot.).  According to Plaintiff, no genuine dispute of fact exists regarding Jones's reliance because Jones testified that he relied on the COI as proof of CFSP's insurance status, and he was entitled to do so under Florida Administrative Code section 69L-6.032.  (*See id.* 4–6).  With respect to the affirmative defenses, Plaintiff presents several arguments, including that they have not been properly stated under federal pleading standards, some are improper defenses as a matter of law, and some present no genuine disputes of fact.  (*See id.* 6–18).

      Defendant contests all of Plaintiff's arguments.  (*See generally* Def.'s Resp.).  First, Defendant argues that the reliance question should be decided in its favor, and not Plaintiff's.  (*See id.* 8–10; Pl.'s Mot. 16–18).  Second, Defendant claims that Plaintiff's arguments regarding affirmative defenses are in truth an improper motion to strike, and should thus be denied; further, it argues that certain affirmative defenses still present triable issues of fact.  (*See* Def.'s Resp. 4–8, 10–12).

      *1.*    *Reliance*

      First, the issue of reliance — meaning, whether Jones relied on the COI.  Plaintiff makes three claims which involve an element of reliance: fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), and information negligently supplied for the guidance of others (Count IV).  (*See* SAC ¶¶ 35–51, 58–67); *see Specialty Marine & Indus. Supplies, Inc. v.*

*Venus*, 66 So. 3d 306, 309–10 (Fla. 1st DCA 2011); *Gilchrist Timber Co.*, 696 So. 2d at 337–39.

According to Plaintiff, Jones's deposition testimony — in which Jones agreed with counsel's questioning that he relied on the accuracy of the COI when he decided to use CFSP on the Project (*see* Pl.'s Mot. SOF, Ex. D., Jones Dep. [ECF No. 75-4] 75:4–76:14) — is alone sufficient to find reliance as a matter of law with respect to Count I (*see* Pl.'s Mot. 4–5). Further, Plaintiff points to the Florida Administrative Code as proof of Jones's absolute entitlement to rely on the COI, thus rendering the reliance reasonable with respect to Counts II and IV. (*See* Pl.'s Mot. 5–6).[9]

In its own Motion, Defendant seeks the opposite outcome, urging the Court to find no disputed facts exist and hold that Jones, as a matter of law, did not rely on the COI. (*See* Def.'s Mot. 16–18). Neither side convinces the Court to rule in its favor, because there are disputed issues of material fact.

To start, the Court must confess some bemusement regarding Plaintiff's argument, given his adamant — and accurate — position earlier in the case that reliance is "a factual issue reserved for the jury to decide[.]" (Pl.'s Resp. to Def.'s Mot. to Dismiss [ECF No. 25] 6 & n.3 (alteration added; citing *Hemispherx Biopharma, Inc. v. Mid-S. Capital, Inc.*, 690 F.3d 1216, 1229 (11th Cir. 2012); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1377 (11th Cir. 1982))). Indeed, the Court in part denied Defendant's Motion to Dismiss [ECF No. 24] precisely because "[i]t is well established that 'reliance is typically left to the trier of fact.'" (Mar. 10, 2023 Order [ECF No. 35] 12 (alteration added; citations omitted)).

The Court sees no reason to now change course, particularly as Jones's "unequivocal"

---

[9] The Court already denied the parties' competing motions *in limine* (*see* [ECF Nos. 95, 98]) on the issue of reliance, which involved many similar arguments as appear in the instant memoranda. (*See* July 19, 2023 Paperless Minute Entry [ECF No. 111]; July 19, 2023 Order [ECF No. 112]).

reliance — reasonable or otherwise — is plainly disputed. (*Compare* Jones Dep. 75:4–76:14 *with* Def.'s Resp. SOF ¶ 5 (disputing Plaintiff's interpretation of Jones's testimony)). The credibility of Jones's uncertain testimony regarding the extent to which he and his company relied on and trusted the COI to confirm workers' compensation coverage (*compare* Pl.'s Mot. SOF ¶ 5 *with* Def.'s Resp. SOF ¶ 5), is precisely the "determination of reliance [] typically left to the trier of fact[,]" *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 173 (Fla. 4th DCA 1994) (alterations added; citation and footnote call number omitted).

Similarly unpersuasive is Plaintiff's reliance on Florida Administrative Code section 69L-6.032. (*See* Pl.'s Mot. 5–6). This administrative rule outlines a contractor's ability to use a certificate of insurance to verify the insurance status of a subcontractor, in compliance with requirements of certain Florida laws and regulations. *See generally* Fla. Admin. Code § 69L-6.032. But, as Defendant explains, the rule simply has nothing to say regarding a contractor's entitlement to use a certificate of insurance to establish reliance, as a matter of law, in subsequent litigation stemming from alleged issues with that certificate of insurance (*see* Def.'s Resp. 8–10 (discussing rule's language)) — nor does Plaintiff provide *any* authority which might demonstrate otherwise (*see generally* Pl.'s Mot.). While the administrative rule may be relevant to proving the reasonableness of Jones's reliance, alone it does not establish whether Jones did or did not rely on the COI.

Of course, this necessarily means that the Court will not rule for Defendant on the reliance question either. Just as the Court is unwilling to make a credibility determination in Plaintiff's favor, it is unwilling to do so in support of Defendant's reliance argument. Like Plaintiff, Defendant cites the conflicting evidence and interpretations of Jones's testimony. (*See* Def.'s Mot. 17–18).

Disputed testimony aside, Defendant also points to the determinations the JCC made in the underlying proceedings with respect to Jones's reliance, arguing that they are "helpful to understanding the case at bar." (Def.'s Mot. 16 (citations omitted)). The Court already rejected these exact arguments when it denied Defendant's Motion to Dismiss. (*See* Mar. 10, 2023 Order 11–13). The Court does not repeat itself in full here, but suffice it to say that "the underlying proceedings determined [only] that Jones could not have relied on the COI — issued by Defendant and not NorGuard — to establish a claim [of promissory estoppel] against NorGuard[.]" (Mar. 10, 2023 Order 11 (alterations added; citation omitted)). The JCC did not make any findings "regarding whether Plaintiff can demonstrate reliance in a claim against Defendant arising from Defendant's alleged misrepresentations." (*Id.* 11–12 (citation omitted)).

Because triable issues of fact remain as to whether Jones relied on the COI, the Court will not grant summary judgment on this issue for either party. *See Thor Bear, Inc.*, 648 So. 2d at 173; *see also Hendricks v. Smartvideo Techs., Inc.*, 511 F. Supp. 2d 1219, 1230 (M.D. Fla. 2007) ("Questions of reliance on an alleged fraudulent misrepresentation must be determined as a question of fact for the jury." (alteration adopted; citations and quotation marks omitted)).

### 2.    *Affirmative Defenses*

The remainder of Plaintiff's Motion seeks summary judgment on all 34 of Defendant's affirmative defenses (*see* Pl.'s Mot. 6–18), which Defendant contests. (*See* Def.'s Resp. 4–8, 10–13).[10] For the reasons explained below, Plaintiff's requests are granted in part and denied in part.

**_Pleading affirmative defenses._** First, the Court provides some clarification regarding affirmative defenses at the summary judgment stage. Plaintiff accuses Defendant of the "shotgun

---

[10] Defendant's unwillingness to expressly concede any of its "defenses" — the vast majority of which are plainly improper or meritless — is not well-taken.

pleading of affirmative defenses" in that it makes barebones and conclusory assertions. (Pl.'s Mot. 6 (quoting *Gomez v. Bird Auto., LLC*, 411 F. Supp. 3d 1332, 1335 (S.D. Fla. 2019))). Defendant views this accusation as a "disguised motion to strike" and explains why such a motion now is procedurally improper. (Def.'s Resp. 5); *see* Fed. R. Civ. P. 12(f)(2).[11] Nevertheless, Defendant attempts to defend its pleading, arguing that affirmative defenses are not subject to heightened pleading standards (*see* Def.'s Resp. 6 n.2),[12] to which Plaintiff responds with renewed challenges (*see* Pl.'s Reply 6–8).

The dispute over proper pleading standards focuses on the wrong issues. "[I]f a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with [Federal Rule of Civil Procedure] Rule 8(c) does not cause the plaintiff any prejudice.'" *Grant v. Preferred Rsch., Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (alterations added; quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)). In other words, Defendant may still rely on improperly framed affirmative defenses — or affirmative defenses first raised at summary judgement — unless Plaintiff demonstrates that the belated defense prejudiced him in some way. *See Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1222 (11th Cir. 2012).

To establish the requisite prejudice, Plaintiff cannot rely on the mere prospect that he "might lose the case if the defense is asserted[.]" *Pinares v. United Techs. Corp.*, 10-cv-80883,

---

[11] Defendant also accuses Plaintiff of violating the Local Rules, which require a party to make reasonable efforts to confer with an opposing party before filing most motions — including motions to strike. (*See* Def.'s Resp. 3 (discussing Local Rule 7.1(a)(3)). Notably, parties need not confer before filing motions for summary judgment. *See* Local Rule 7.1(a)(3).

[12] Defendant provides a lengthy, technically correct description of this Circuit's internal split regarding the applicable pleading standards for affirmative defenses. (*See* Def.'s Resp. 6). Defendant's research seemingly failed to locate the undersigned's view. *See, e.g.*, *Jenkins v. Grant Thornton LLP*, No. 13-60957-Civ, 2014 WL 12634797, at *1 (S.D. Fla. July 22, 2014).

2018 WL 10502427, at *3 n.6 (S.D. Fla. Dec. 6, 2018) (alteration added).  Rather, prejudice here requires Plaintiff to demonstrate that Defendant's belated, "surprise" assertion prevented him from discovering different evidence or developing a different theory of the case over the course of the litigation.  *Id.* at *3 n.5 (quoting *Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. 1981)); *see also Cooper v. Marten Transp., Ltd.*, No. 1:10-cv-3044, 2014 WL 11517830, at *5 (N.D. Ga. May 23, 2014).  Moreover, a plaintiff's "surprise" can be mitigated, and prejudice avoided, if the affirmative defense raised in the summary judgment motion is itself a more specific version of a generic affirmative defense raised in the initial pleading.  *See, e.g.*, *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1258–59 (11th Cir. 2014) (finding no prejudice because a defendant's pleading of a generic "failure to mitigate" defense put the plaintiff on sufficient notice of the more specific version of the defense raised at summary judgment and trial).

Plaintiff ignores the question of prejudice.  (*See generally* Pl.'s Mot.; Pl.'s Reply).  Instead, he continues to stress Defendant's "pleading failures" (Pl.'s Reply 6), while overlooking the fact that the time to raise his concerns regarding Defendant's pleading has long since passed, *see* Fed. R. Civ. P. 12(f)(2).  Without any indication of prejudice, the Court will not, at this stage of the proceedings, perfunctorily strike all 34 affirmative defenses due to Defendant's failure to adequately plead them.  *See Grant*, 885 F.2d at 797.

Pleading issues aside, Plaintiff challenges the defenses as failing to survive summary judgment.  The Court now addresses these arguments.[13]

***Affirmative Defenses 1, 3, 10.***  The first group of defenses Plaintiff seeks summary judgment on are those defenses which Plaintiff characterizes as disputing Defendant's "duty" to

---

[13] Remarkably, the parties manage to argue over the very standards the Court should apply in addressing affirmative defenses at summary judgment. (*See* Def.'s Resp. 4; Pl.'s Reply 5 n.4).  The summary judgment standard, which the Court already outlined in Part II, is well-established.  *See, e.g.*, Fed. R. Civ. P. 56; *Blackhawk Yachting, LLC*, 2015 WL 11176299, at *2.

Plaintiff.  (Pl.'s Mot. 6–7).  To summarize, in these three defenses Defendant states that Plaintiff fails to state a cause of action because: Defendant "did not have a duty to" Jones (Aff. Def. ¶ 1); "there is no requirement for [Defendant] to notify [Jones]" (*id.* ¶ 3 (alterations added)); and "Defendant did not owe a duty to Jones regarding CFSP's payment status on the insurance coverage" (*id.* ¶ 10).  Rather than identify undisputed facts, Plaintiff seeks summary judgment on these defenses because they "misconstrue[] Plaintiff's claims and [are] irrelevant to Plaintiff's causes of action."  (Pl.'s Mot. 7 (alterations added)).

To start, these are not proper affirmative defenses.  A "defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."  *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).  "An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case;" furthermore, "it is well established that "the party asserting an affirmative defense usually has the burden of proving it."  *Id.* (alteration adopted; citation and quotation marks omitted).  "When [a] defendant mislabels a specific denial as a defense, the proper remedy is to treat the claim as a denial[.]"  *FAST SRL v. Direct Connection Travel LLC*, 330 F.R.D. 315, 319 (S.D. Fla. 2018) (alteration omitted; other alterations added; citation and quotation marks omitted).

Defendant expressly disclaims any responsibility of proving anything by these defenses, instead accusing Plaintiff of avoiding his own burden of proof regarding the question of a duty. (*See* Def.'s Resp. 7–8).  Simply denying the existence of a duty to Jones — which all three defenses do — does not suffice to state a proper affirmative defense.  *See Vance v. Westfalia Techs., Inc.*, No. 12-cv-1902, 2013 WL 3270414, at *3 (M.D. Fla. June 26, 2013) ("[S]tating the Defendant did not have a duty, is in fact a denial of an element of the Plaintiffs' claim of negligence." (alteration

added)).[14]

Plaintiff's request is denied — there is no need to grant summary judgment on these defenses because these are not affirmative defenses. Rather, they are specific denials of Plaintiff's claims. *See FAST SRL*, 330 F.R.D. at 319.[15]

**_Affirmative Defenses 2, 9._** Plaintiff next takes aim at those affirmative defenses which claim that the COI was "accurate" and "contained no false statement of facts." (Aff. Defs. ¶¶ 2, 9; *see* Def.'s Mot. 7–8). The Court agrees with Plaintiff that these "defenses" are merely denials of Plaintiff's claim that the COI was false and misleading. (*See, e.g.*, SAC ¶ 19). Consequently, the Court disposes of these defenses as it did the ones above. Plaintiff's request for summary judgment is denied. *See FAST SRL*, 330 F.R.D. at 319.

**_Affirmative Defenses 4, 18._** Affirmative defenses four and 18 allege that Plaintiff's claims are barred by either the statute of limitations or the doctrine of laches. (*See* Aff. Defs. ¶¶ 4, 18). While these are affirmative defenses,[16] Plaintiff correctly notes that the Court has already ruled that his claims are not time-barred. (*See* Pl.'s Mot. 8 (citing Mar. 10, 2023 Order 6–10)). Wisely,

---

[14] Admittedly, neither of Plaintiff's misrepresentation claims, nor his negligent-supply-of-information claim, contains the element of a "duty." *See Specialty Marine & Indus. Supplies, Inc.*, 66 So. 3d at 309–10; *Gilchrist Timber Co.*, 696 So. 2d at 337–39. Nonetheless, considering the claim of ordinary negligence Plaintiff asserts against Defendant (*see* SAC ¶¶ 52–57 (alleging Defendant had a "duty" to Jones and "breached its duty")), the Court agrees it is "perplexing" (Def.'s Resp. 7) that Plaintiff disclaims any responsibility to demonstrate Defendant's duty (*see* Pl.'s Mot. 6–7).

[15] The Court need not go further and does not attempt to determine the extent of the parties' factual disputes on their competing allegations and denials. *See Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001) ("[T]he Supreme Court has acknowledged that, even in the absence of a factual dispute, a district court has the power to deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." (alteration added; citations and quotation marks omitted). The parties' cursory briefing on these matters — and indeed on most of the affirmative defenses — leads the Court to "believe[] the case would benefit from a full hearing" on these issues. *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292, 1297 (11th Cir. 1991) (alteration added).

[16] *See McCray v. State*, 699 So. 2d 1366, 1368 (Fla. 1997) (laches); *Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. 4th DCA 2005) (statute of limitations).

Defendant does not defend these defenses (*see generally* Def.'s Resp.) — and given the prior ruling, the Court questions why Defendant felt these were appropriate to include in its pleading. Plaintiff's request for summary judgment on these defenses is granted.

*Affirmative Defense 5.*   Next, Plaintiff seeks summary judgment on Defendant's affirmative defense of "intervening causes[,]" which states that "acts or omissions by CFSP and acts or omissions by Plaintiff" "broke the causal link between [Defendant]'s action or inaction and the Plaintiff's assignor's injury." (Aff. Def. ¶ 5 (alterations added); *see* Def.'s Mot. 8–9)).

Most of Plaintiff's arguments pertain to alleged deficiencies in Defendant's pleading; as explained, those deficiencies, standing alone, are insufficient to deny the defense. But Plaintiff also notes that "there are no facts that could establish that either CFSP or Plaintiff 'intervened' in Defendant's misrepresentation to Jones in the COI." (Pl.'s Mot. 9; *see also* Def.'s Resp. SOF ¶ 11 (listing undisputed fact that Defendant was the sole entity that issued the COI to Jones)).

Further, Defendant fails to address Plaintiff's argument pertaining to this affirmative defense. (*See generally* Def.'s Resp.). Therefore, the Court grants Plaintiff summary judgment on this affirmative defense. *See GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned." (citations omitted)).

*Affirmative Defenses 6, 7.*   Plaintiff next challenges two defenses that he categorizes as "[a]ssumption of [r]isk / [d]isclaimer / [r]eliance [d]efense[s.]" (Pl.'s Mot. 9 (alterations added)). Again, neither of these "defenses" is properly considered an affirmative defense. In Affirmative Defense Six, Defendant accuses Jones of "assum[ing] the risk in accepting the" COI because he "should have known the policy could be cancelled[.]" (Aff. Def. ¶ 6 (alterations added)). In Affirmative Defense Seven, Defendant states "Plaintiff cannot establish reliance[.]" (Aff. Def. ¶

7 (alteration added)).

The Court struggles to see how the defenses are not specific denials, rather than proper affirmative defenses. *See In re Rawson Food Serv., Inc.*, 846 F.2d at 1349.[17]  Surely, Defendant does not wish to assume the burden of proving Jones's non-reliance. *See id.*  And Defendant's Response does nothing to persuade the Court otherwise — Defendant ultimately asks the Court to treat them as denials. (*See* Def.'s Resp. 11).

The Court accepts Defendant's invitation to do so. These are denials, not defenses, *see FAST SRL*, 330 F.R.D. at 319; and Plaintiff's request is denied.

***Affirmative Defense 8.***  With this affirmative defense, Defendant appears to allege that the "only stated condition precedent to cancellation" of the underlying policy was complied with. (Aff. Def. ¶ 8).  Plaintiff describes how this "affirmative defense" makes little sense. (Pl.'s Mot. 11).  Certainly, a plaintiff's failure to satisfy a condition precedent "necessary to trigger contractual duties" is a valid affirmative defense to certain contractual claims. *Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1096 (Fla. 2010) (citations omitted).  Yet, Defendant provides no explanation as to how its own compliance with a contract between itself, NorGuard, and CFSP somehow establishes an affirmative defense to Jones's non-contractual claims against Defendant. (*See generally* Def.'s Resp.; Aff. Defs.; SAC).

Plaintiff's request for summary judgment on this defense is granted. *See GolTV, Inc.*, 277

---

[17] Although Defendant states that Jones "assumed the risk in accepting" the COI (Aff. Def. ¶ 6), Defendant's Response makes clear that this "defense" is meant to contest the reasonableness of Jones's reliance, not state the affirmative defense of assumption of risk (*see* Def.'s Resp. 10–12). If Defendant had tried to stand on an "assumption of risk" defense, that would have been improper. *See Petruzzella v. Church on the Rock of Palm Coast, Inc.*, 219 So. 3d 239, 241 (Fla. 5th DCA 2017) (explaining that in Florida "express assumption of the risk" only applies to certain contracts and "injuries resulting from contact sports," and "that conduct characterized as implied secondary assumption of risk, which is unreasonable in nature, should be evaluated by the jury under the principles of comparative negligence" (citing *Mazzeo v. City of Sebastian*, 550 So. 2d 1113, 1114–17 (Fla. 1989))).

F. Supp. 3d at 1311 n.7.

    ***Affirmative Defenses 11, 12.***  Defendant alleges that "Plaintiff's acts or omissions, as assignee of Jones and as an individual, contributed to his own injury." (Aff. Def. ¶ 11).  Further, "Plaintiff, as assignee of Jones and as an individual, is barred form [sic] recovery as he is more than 50% at fault for his injuries." (*Id.* ¶ 12).  Plaintiff argues that both defenses — which are, at bottom, raise comparative negligence — are insufficiently alleged and inapplicable as a matter of law.  (*See* Pl.'s Mot 12–14).

    Defendant fails to specifically address Plaintiff's arguments.  (*See generally* Def.'s Resp.).  Nevertheless, comparative negligence is an affirmative defense, at least to the negligence-based claims.  *See Philip Morris USA, Inc. v. Arnitz*, 933 So. 2d 693, 697 (Fla. 2d DCA 2006); *Cont'l Cas. Co. v. Cura Grp., Inc.*, No. 03-61846-Civ, 2005 WL 8155321, at *33 (S.D. Fla. Apr. 6, 2005.  Thus, Plaintiff bears the burden of first demonstrating the nonexistence of a genuine issue of material fact on these affirmative defenses and showing the Court there is insufficient evidence to support Defendant's claims, *see Blackhawk Yachting, LLC*, 2015 WL 11176299, at *2.  Plaintiff's Motion — which fails to identify or cite any record evidence in support — fails to do so.  (*See* Pl.'s Mot. 12–13).

    Rather, Plaintiff argues only with cursory and unconvincing legal references.  (*See* Pl's Mot. 12–13).  First, Plaintiff points to Florida Statute section 440.11, which governs the proceedings for workers' compensation claims between workers and employers.  *See generally* Fla. Stat. § 440.11.  If "an employer fails to secure" necessary workers' compensation insurance, the statute precludes that employer from asserting a comparative negligence defense against an employee who then sues it asserting a workers' compensation claim.  *See id.* § 440.11(1)(a).  That provision has nothing say regarding this case, which involves common law claims asserted by an

employer — or rather, Plaintiff as assignee of that employer — against an insurance agent.  *See generally id.*; (SAC).  Second, Plaintiff repeats his issues with Defendant's pleading, which are inapplicable for reasons the Court has already explained.

Consequently, this request is granted in part and denied in part.  Comparative negligence is not a defense to Plaintiff's fraud claim, so summary judgment in Plaintiff's favor is granted as to that defense.  Yet, Plaintiff has not demonstrated that summary judgment in his favor on these defenses — as they apply to the negligence claims — is warranted.

***Affirmative Defense 13.***  Next, Plaintiff revives the parties' dispute over the proper measure of damages in this case.  (*See* Pl.'s Mot. 13–14; *see also* Pl.'s Mot. *in Limine* [ECF No. 95] 6–8).  Plaintiff believes the full measure of damages available is the amount to which Jones and Plaintiff stipulated, and which was approved by the JCC: $1.85 million.  (*See* Pl.'s Mot. 13–14).  Defendant, in contrast, insists that any damages are capped by the original policy's limit of $500,000 (*see* Aff. Def. ¶ 13; Def.'s Mot. 20 n.3), in accordance with the general rule that "an insurance agent's liability for negligence leading to the cancellation of an insurance policy cannot exceed the amount of the insurance obtained[,]" *Flores v. Green*, 876 So. 2d 631, 632 (Fla. 3d DCA 2004) (alteration added; citations omitted).

The Court already considered these exact arguments in the parties' motions *in limine* — in fact, the language Plaintiff uses in the instant Motion and his Motion *in Limine* is identical.  (*Compare* Pl.'s Mot. 13–14; Pl.'s Mot. *in Limine* 6–8).  The Court denied the parties' motions *in limine* on the question of damages, for reasons explained in open court at the hearing on July 19, 2023 (*see* July 19, 2023 Paperless Minute Entry; *see also* July 19, 2023 Order), and will not repeat itself here.

This request is denied.

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

***Affirmative Defenses 15–17, 23–28.***  Plaintiff's next challenge is directed to a category of defenses which he summarizes as the defense "that Plaintiff was not working for CFSP at the time of the injury." (Pl.'s Mot. 15).  Taken together, these defenses assert that Plaintiff's claims against Defendant are barred because Plaintiff was not employed by CFSP — and ultimately, by Jones — and so Plaintiff was not entitled to recover any amount from CFSP's workers' compensation policy.  (*See* Aff. Defs. ¶¶ 15–17, 23–28).  In his Motion *in Limine*, Plaintiff attempted to exclude evidence disputing the identify of his employer at the time of the incident.  (*See* Pl.'s Mot. *in Limine* 5, 10–11).  The Court denied that request.  (*See* July 19, 2023 Paperless Minute Entry; July 19, 2023 Order).

While Defendant fails to address Plaintiff's arguments (*see generally* Def.'s Resp.), Plaintiff still bears the burden of demonstrating the nonexistence of a genuine issue of material fact on these defenses and showing the Court there is insufficient evidence to support them, *see Blackhawk Yachting, LLC*, 2015 WL 11176299, at *2.  Plaintiff fails to do so because there remains a clear dispute of fact as to who employed Plaintiff at the time of the accident.  (*Compare* Def.'s Resp. SOF ¶ 20 *with* Pl.'s Reply SOF ¶ 20 (noting conflicting deposition testimony as to the identify of Plaintiff's employer); *see also* Def.'s Mot. SOF ¶ 52 (describing evidence that CFSP was not Plaintiff's employer); Pl.'s Resp. SOF ¶ 52 (describing evidence that CFSP was Plaintiff's employer)).

Plaintiff's request for summary judgment on these defenses is denied.

***Affirmative Defense 19.***  Defendant asserts that "Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands arising from Jones' own acts or omissions."  (Aff. Def. ¶ 19).  "Unclean hands" is an equitable doctrine which "applies only to claims for equitable relief or in opposition to equitable defenses."  *Regions Bank v. Old Jupiter, LLC*, No. 10-80188-Civ, 2010

WL 5148467, at *6 (S.D. Fla. Dec. 13, 2010), *aff'd*, 449 F. App'x 818 (11th Cir. 2011) (citations omitted).  Plaintiff's fraud and negligence claims do not arise in equity.  (*See* SAC ¶¶ 35–67; Pl.'s Mot. 16–17).  This affirmative defense fails as a matter of law, and Plaintiff's request is granted.

 ***Affirmative Defense 20.***  In this defense, Defendant appears to invoke the doctrine of speculative damages.  (*See* Aff. Def. ¶ 20).  As Plaintiff explains, that doctrine is wholly inapplicable here.  (*See* Pl.'s Mot. 17).  Further, the plain language of the allegations indicate Defendant is denying Jones's reliance and damages, not proffering an affirmative defense.  (*See id.*; Aff. Def. ¶ 20).  Because this defense is a denial, *see FAST SRL*, 330 F.R.D. at 319, Plaintiff's request for summary judgment is denied.

 ***Affirmative Defenses 14, 21, 22, 29–34.***  Defendant asserts numerous other "affirmative defenses" which — as Plaintiff explains — are either inapplicable, unsupported by any record evidence, or not considered proper affirmative defenses.  (*See* Pl.'s Mot. 17–18; *see* Aff. Defs. ¶¶ 14, 21, 22, 29–34).  Defendant fails to respond to any of Plaintiff's arguments or defend these allegations from its pleading.  (*See generally* Def.'s Resp.); *see GolTV, Inc.*, 277 F. Supp. 3d at 1311 n.7.  Summary judgment in Plaintiff's favor on these defenses is granted.

 **b.** **Defendant's Motion**

 The Court now turns to Defendant's Motion.  Defendant requests summary judgment in its favor on the following issues: whether (1) the COI was false or inaccurate, or Defendant had knowledge of the falsity or inaccuracy; (2) Jones exercised the required diligence regarding the COI; (3) Defendant had a duty to Jones; (4) Plaintiff can support his negligent-supply-of-information claim; (5) Defendant intended to induce Jones's reliance; and (6) Jones suffered any

legally cognizable damages.  (*See generally* Def.'s Mot).[18]

Plaintiff identifies material disputes of fact on each issue.  (*See generally* Pl.'s Resp.).  The Court explains.

### 1.    *False or Misleading Statement*

Defendant first seeks summary judgment on all four claims for relief because "Plaintiff cannot establish: (1) a false statement of material fact; (2) a misrepresentation of material fact; nor (3) that [Defendant] made any representation it believed to be true[] but was false."  (Def.'s Mot. 6 (alterations added; citation omitted)). The alleged misrepresentations contained in the COI, and Defendant's knowledge of those misrepresentations, are necessary components of Plaintiff's claims.  (*See* SAC ¶¶ 37, 46, 55, 60); *see also Specialty Marine & Indus. Supplies, Inc.*, 66 So. 3d at 309–10; *Gilchrist Timber Co.*, 696 So. 2d at 337–39.   Defendant fails to persuade because Plaintiff identifies sufficient record evidence to create an issue of fact for the jury as to whether (1) Defendant made a false or misleading statement, (2) which it knew or should have known was false or misleading.  (*See* Pl.'s Resp. 1–5).

To summarize the relevant evidence: "[u]tilizing [Defendant]'s services, CFSP obtained a workers' compensation insurance policy from NorGuard, with a policy period of April 29, 2017 through April 29, 2018."  (Def.'s Mot. SOF ¶ 3 (alterations added; citations omitted)).  Defendant was to "provide immediate notice of CFSP's non-payment of premium amounts" to NorGuard; Defendant knew that reporting such "may result in loss of coverage and/or non–renewal of coverage."  (*Id.* ¶ 9 (citations omitted)).

On January 23, 2018, Defendant let NorGuard know that CFSP had failed to pay the necessary premiums or run payroll.  (*See* Def.'s Mot. SOF ¶ 16).  Defendant knew that once it

---

[18] Defendant also seeks summary judgment regarding Jones's reliance (*see* Def.'s Mot. 16–18); the Court rejected this argument in Part III.a.1.

notified NorGuard of this noncompliance, cancellation of the insurance policy would likely soon occur. (*See id.* ¶ 11; Pl.'s Resp. SOF ¶ 11). That happened here. The next day, on January 24, 2018, NorGuard sent a Notice of Cancellation to CFSP, indicating the policy coverage would expire on February 10, 2018. (*See* Def.'s Mot. SOF ¶ 19). When Defendant acquired knowledge of this pending expiration date is a disputed fact. (*Compare id.* ¶¶ 18, 19 *with* Pl.'s Resp. SOF ¶ 18).

Despite the pending cancellation, Defendant issued the COI to Jones on February 6, 2018. (*See* Def.'s Mot. SOF ¶ 24). While the COI contained disclaimers regarding the information provided, it still "certified that CFSP had a workers' compensation policy with a policy period effective April 29, 2017 through April 29, 2018." (Def.'s Mot. 7 (citing Def.'s Mot. SOF ¶ 25)). Although those dates were correct with respect to the original policy term, disputed facts show that Defendant, by this point, knew the policy would expire before then. (*See* Pl.'s Resp. 2–4; *compare* Def.'s Mot. SOF ¶ 30 *with* Pl.'s Resp. SOF ¶ 30). Plaintiff identifies other disputed facts regarding Defendant's ability to monitor the status of policies pending cancellation and to include that information in issued certificates. (*See* Pl.'s Resp. SOF ¶ 30).

Taken together, Defendant's repeated insistence that "the COI was [indisputably] 100% true and accurate at the time of issuance" (Def.'s Mot. 6 (alteration added); *see, e.g., id.* 2, 3, 8, 10), is belied by the record. Certainly, a reasonable jury could find that the COI's representation that the policy would expire on April 29, 2018, despite Defendant having already initiated the process by which the policy would be cancelled much earlier, was a false or misleading statement. (*See* Def.'s Mot. SOF ¶¶ 11, 16, 18, 24; Pl.'s Resp. 1–2). Of course, a reasonable jury might also find that at the time Defendant issued the COI — which contained multiple disclaimers — CFSP did in fact have an "active" insurance policy that expired on April 29, 2018, so the COI was not

false or misleading.  (Def.'s Mot. 7 (emphasis omitted)).

In that same vein, a reasonable jury, having already found a misrepresentation in the COI, might then find that Defendant knew or should have known about the erroneous statement; even Defendant concedes it "may have been aware that the policy could be cancelled prior to issuing the COI[.]" (Def.'s Mot. 10 (alteration added; citing Def.'s Mot. SOF ¶ 34); *see also* Pl.'s Resp. SOF ¶ 34).  Another reasonable jury, considering these same facts, might instead take Defendant's view and find that Defendant did not know about the cancellation until it received official confirmation from NorGuard on February 13, 2018 — after the COI had already been issued.  (*See* Def.'s Mot. 8–11; *compare* Def.'s Mot. SOF ¶ 34 *with* Pl.'s Resp. SOF ¶ 34).

It is for the jury to determine which of these two plausible, competing interpretations of fact to believe, not the Court.  *See Lopes v. Allstate Indem. Co.*, 873 So. 2d 344, 347 (Fla. 3d DCA 2004) ("The question of whether . . . a material misrepresentation [was made] is a question for the jury to determine." (alterations added; citation omitted)); *Holmes v. Fla. A & M Univ. by & Through Bd. of Trustees*, 260 So. 3d 400, 407 (Fla. 1st DCA 2018) (noting that it is generally "a matter for the jury to determine if an intentional misrepresentation has been made by one party to another" (citation and quotation marks omitted)); *Jenne v. Broward Serv. Ctr., Inc.*, 717 So. 2d 585, 586 (Fla. 4th DCA 1998) ("Whether a party has made fraudulent misrepresentations is a question for the jury." (citation omitted)).

### 2. *Jones's Diligence and Justifiable Reliance*

Next, Defendant seeks summary judgment on Counts II and IV — the negligent misrepresentation and negligent-supply-of-information claims, respectively.  (*See* SAC ¶¶ 44–51, 58–67).  According to Defendant, it is undisputed that Jones failed to exercise "ordinary diligence" in investigating the COI's statements.  (Def.'s Mot. 11).  In response, Plaintiff first argues that

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

Defendant failed to properly plead due diligence as an affirmative defense; he further insists that even if considered, the argument is meritless. (*See* Pl.'s Resp. 8–10). Neither party is correct; summary judgment is not warranted because a genuine dispute of fact regarding Jones's diligence, or lack thereof, exists.[19]

The parties appear to confuse the doctrine of due diligence with the concept of justifiable reliance. (*Compare* Def.'s Mot. 11–13 (arguing that Jones failed to exercise the expected ordinary diligence in investigating Defendant's statements) *with* Pl.'s Resp. 9–10 (focusing exclusively on the doctrine of due diligence)).[20] While the failure to conduct due diligence can be an affirmative defense, that doctrine differs from the question of justifiable reliance, which is an element of Plaintiff's negligent misrepresentation claims. *See Butler*, 44 So. 3d at 104–05.

For Plaintiff's negligent misrepresentation claims, "[j]ustifiable reliance is necessary." *Kurimski*, 570 F. Supp. 3d at 1250 (alteration added; citations omitted). "[W]hile a recipient of information will not have to investigate every piece of information furnished, he or she is responsible for 'investigating information that a reasonable person in the position of the recipient would be expected to investigate.'" *Butler*, 44 So. 3d at 105 (alteration added; quotation marks and citation omitted). In other words, "a recipient of an erroneous representation cannot 'hide behind the unintentional negligence of the misrepresenter when the recipient is likewise negligent in failing to discover the error.'" *Id.* (citation omitted); *see also Specialty Marine & Indus.*

---

[19] In his Motion *in Limine*, Plaintiff also sought to exclude evidence pertaining to Jones's diligence (*see* Pl.'s Mot. *in Limine* 8–9), which the Court denied (*see* July 19, 2023 Paperless Minute Entry; July 19, 2023 Order).

[20] The confusion likely stems from Defendant's use of the phrase "ordinary diligence" rather than justifiable reliance. Nevertheless, Defendant's argument — and citations to case law — make clear that the issue is one of justifiable reliance, not due diligence. (*See* Def.'s Mot. 11 (discussing *Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228 (S.D. Fla. 2021)); *see also Butler*, 44 So. 3d at 105 (differentiating due diligence from justifiable reliance).

*Supplies, Inc.*, 66 So. 3d at 310 (explaining that under Florida law, "liability for a negligent misrepresentation is dependent upon a finding that a party's reliance on the misrepresentation was justifiable").

Plaintiff insists that there is no need to consider the issue of Jones's reliance or diligence, but his arguments fail to persuade. (*See* Pl's Resp. 9–10). First, Plaintiff again points to Florida Administrative Code section 69L-6.032 as protecting Jones's reliance on the COI; as the Court has already explained, Plaintiff's reliance on this administrative rule is misplaced. *See supra* Part III.b.1. Second, Plaintiff's attempts to distinguish Defendant's cited cases (*see, e.g.*, Pl.'s Resp. 10 ("The facts simply don't align with this case.")), entirely fail to grapple with the relevant facts presented here.

In any event, Defendant does not demonstrate that summary judgment is warranted in its favor because disputed facts remain regarding Jones's reliance and diligence. *See Blackhawk Yachting, LLC*, 2015 WL 11176299, at *2. Jones admittedly took no further action to verify the status of CFSP's workers' compensation insurance, even though more than two months passed between Jones obtaining the COI and Plaintiff's injuries on the Project. (*See* Def.'s Mot. SOF ¶ 41). Defendant provides a list of actions which Jones might have taken to investigate the COI, including asking Defendant to put him on notice as to any pending cancellations, or checking a public website that monitors the status of contractors' and subcontractors' insurance policies. (*See id.* ¶¶ 38, 43–46). Given the delay in time and Jones's failure to further investigate, a reasonable jury might agree with Defendant that Jones's reliance was unjustified.

Yet again, a reasonable jury might instead take Plaintiff's view. Florida Administrative Code section 69L-6.032 may not be dispositive of the issue, but it is relevant to the reasonableness of Jones's reliance on the COI. (*Compare* Def.'s Mot. SOF ¶ 41 *with* Pl.'s Resp. SOF ¶ 41).

Further, Plaintiff contests whether some of the investigative actions Defendant identifies were even available to Jones. (*See* Pl.'s Resp. SOF ¶ 38). These conflicting interpretations are sufficient to create a triable issue of fact. *See Chapman*, 229 F.3d at 1023.

The Court declines to grant summary judgment. A jury may resolve this issue. *See Specialty Marine & Indus. Supplies, Inc.*, 66 So. 3d at 311 ("It is for the jury to determine whether reliance was justified under the totality of circumstances." (citation omitted)); *Emerald Coast Utils. Auth. v. Am. Cast Iron Pipe Co.*, No. 3:20-cv-5986, 2023 WL 4422853, at *8 (N.D. Fla. July 10, 2023) (explaining why a genuine dispute of fact regarding the plaintiff's justifiable reliance must be submitted to the jury).

### 3. Defendant's Duty

Next, Defendant seeks summary judgment on all of Plaintiff's claims because "Plaintiff has not, and cannot, prove the existence of any 'duty' [Defendant] owed Jones, which is an essential element to all" four Counts. (Def.'s Mot. 14 (alteration added)). Plaintiff insists that Defendant misreads the relevant case law, and that his misrepresentation claims do not require a "special duty that Plaintiff must establish[.]" (Pl.'s Resp. 10 (alteration added)).[21]  Defendant's arguments do not persuade. The Court first addresses the question of duty as it pertains to Counts I, II, and III; and considers the question of duty for Count IV in the next section.

Defendant relies on out-of-context citations to support its erroneous interpretation of what Plaintiff's claims require Plaintiff to prove. (*See* Def.'s Mot. 14–16 (discussing *Lyle v. Nat'l Sav. Life Ins. Co.*, 558 So. 2d 1047, 1048 (Fla. 1st DCA 1990); *Gyongyosi v. Miller*, 80 So. 3d 1070, 1077 (Fla. 4th DCA 2012)); Pl.'s Resp. 10–13 (explaining Defendant's error)). In short,

---

[21] While Plaintiff's argument is correct as it pertains to misrepresentation claims, he appears to have once again overlooked that, in addition to his misrepresentation claims, he also asserts a common law negligence claim (*see* SAC ¶¶ 52–57), which does require the element of duty, *see, e.g.*, *Gyongyosi*, 80 So. 3d at 1077.

Defendant's limited citations do not match the well-established elements of Plaintiff's fraudulent and negligent misrepresentation claims, neither of which requires a special duty. *See Specialty Marine & Indus. Supplies, Inc.*, 66 So. 3d at 309–10; *Gilchrist Timber Co.*, 696 So. 2d at 337–39; *Butler*, 44 So. 3d at 105. And while Plaintiff's ordinary negligence claims do contain the duty element, the Court views the "duty" for all of these claims as straightforward: it is "the common law duty to exercise reasonable care or competence in supplying information." *Tynes v. Buccaneers Ltd. P'ship*, 134 F. Supp. 3d 1351, 1356 (M.D. Fla. 2015).

The Court will not grant Defendant summary judgment on this issue.

### 4.    *Count IV*

Buried within Defendant's general arguments regarding duty is a separate, specific argument that summary judgment is warranted with respect to the negligent-supply-of-information claim in Count IV. (*See* Def.'s Mot. 14–16 (citing cases and the Second Restatement which govern that claim); Def.'s Reply 8–9 (seeking summary judgment on Count IV)). According to Plaintiff, a genuine dispute of fact remains as to the elements of this claim, also referred to as a "cause of action for false information negligently supplied[.]"   (Pl.'s Resp. 13 (alteration added; footnote call number omitted)).   Plaintiff has the better argument.

The negligent-supply-of-information claim, unlike Plaintiff's other claims, requires that a defendant "have a pecuniary interest in the transaction or context in which the information is supplied in order to merit the imposition of a duty of care in obtaining and communicating the information[,]" because the cause of action "has been interpreted as limiting liability for the supply of false information to those entities that are in the business of supplying a particular type of information." *Blumstein v. Sports Immortals, Inc.*, 67 So. 3d 437, 441 (Fla. 4th DCA 2011) (alteration added; citation, quotation marks, and footnote call number omitted). Further, "[o]ne

who is in the business of supplying a certain type of information may have the requisite pecuniary interest, even though no consideration is paid for the opinion." *Id.* (alteration added; citation omitted).

In Defendant's view, this claim fails because there was no contract between Jones and Defendant; Defendant "is in the business of obtaining insurance on behalf of its clients, and is not in the business of supplying information to third persons about its client's business qualifications[;]" Defendant had no pecuniary interest in providing the information; and Jones was not an individual "for whose benefit and guidance [Defendant] 'intended to supply information." (Def.'s Mot. 14 (alterations added; citations omitted)).

A reasonable jury might agree with Defendant's interpretation. But the Court can also envision a reasonable jury that might not. True, there was no contractual relationship between Jones and Defendant; but that is not a requirement for Plaintiff to prevail. *See Gilchrist Timber Co.*, 696 So. 2d at 337; *Blumstein*, 67 So. 3d at 441. Instead, Plaintiff's claim is based on the COI Defendant issued to Jones. (*See* Def.'s Mot. SOF ¶ 24). And the record shows that Defendant, during its normal business: (1) procures insurance policies (*see id.* ¶¶ 1, 3); (2) provides proof of these insurance policies to contractors (*see id.* ¶ 23); and (3) is aware that the purpose of the proof it provides — in the form of certificates of insurance — "is that the subcontractor would need to produce it for the contractor that they were going to engage in work with" (Def.'s Reply SOF ¶ 63). A reasonable jury presented those facts might agree with Plaintiff that Defendant provided the allegedly false COI in the course of a "transaction in which [it] ha[d] a pecuniary interest," and that Jones was a person "whose benefit and guidance [it] intend[ed] to supply the information or kn[ew] that the recipient intend[ed] to supply it[.]" *Gilchrist Timber Co.*, 696 So. 2d at 337 (alterations added; citation omitted); (*see also* Pl's Mot. 14).

Defendant's wholly unsupported statement that it "solely produced the COI for the benefit of its client, CFSP, with no intention of providing any benefit to Jones" (Def.'s Reply 9) is difficult to reconcile with a reasonable, opposite inference supported by the record: that Defendant's business, at least in part, is providing certificates to contractors to verify the insurance status of subcontractors (*see, e.g.*, Def.'s Mot. SOF ¶¶ 1, 3, 23); *see also Chapman*, 229 F.3d at 1023 ("[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." (alteration added; citation omitted)).

Defendant has not met its burden on this issue.  Count IV presents a triable issue of fact for the jury.

       5.    *Defendant's Inducement of Jones*

Next, Defendant seeks summary judgment on all four Counts, asserting "Plaintiff cannot show that [Defendant] intended Jones to rely on" the COI.  (Def.'s Mot. 18 (alteration added; emphasis omitted)).  Of course, as the Court has just described, there is a set of facts which results in the opposite conclusion and which a reasonable jury might believe.  (*See also* Pl.'s Resp. 15). Defendant admits it provided the COI to Jones (*see* Def.'s Mot. SOF ¶ 24) and was, at a minimum, aware that contractors use — or perhaps, rely on — these certificates as evidence of a subcontractor's insurance coverage (*see id.* ¶¶ 1, 3, 23; Def.'s Reply SOF ¶ 63).  Indeed, Plaintiff is hard-pressed to determine any other "reason [for Defendant] to provide" a COI (Pl.'s Resp. 15 (alteration added)) — as is the Court, based on the record before it.

Consequently, Defendant has not met its burden with respect to summary judgment in its favor on whether it induced, or intended to induce, Jones's reliance.  *See Blackhawk Yachting, LLC*, 2015 WL 11176299, at *2.  Because there remains a triable issue of fact, Defendant's request is denied.

6. *Legally Cognizable Damages*

The Court reaches the last area of dispute.  Once more, the parties argue over the existence and proper measure of damages; most of the language in the parties' memoranda is the same as the language in the parties' prior briefing in their motions *in limine*.  (*See* Def.'s Mot 19–20; Pl.'s Resp. 17–20; *see also* Pl.'s Mot. *in Limine* 6–8; Def.'s Mot. *in Limine* [ECF No. 98] 3–7).  The Court declines the invitation to repeat itself on this issue.  (*See* July 19, 2023 Paperless Minute Entry; July 19, 2023 Order).

As explained in open court, Plaintiff's decision to measure and prove damages solely with his and Jones's stipulation before the JCC, and nothing more, is his prerogative.  (*See* July 19, 2023 Paperless Minute Entry).  But it certainly does not mean that the Court is unable to discern the existence of damages, nor that a reasonable jury would be unable to decide what the measure of those damages might be: in Plaintiff's view, it is the amount the JCC held Jones liable for.  (*Compare* Def.'s Mot. SOF ¶¶ 59–60 *with* Pl.'s Resp. SOF ¶¶ 59–60).

Defendant takes further issue with the assignment of Jones's claim to Plaintiff, arguing that no damages exist because "Jones avoided any payment to Plaintiff and the liability complained of altogether."  (Def.'s Mot. 19 (citation omitted)).  This argument fails to persuade.  As Plaintiff explains, the assignment does not release Jones from liability, but rather reflects an agreement by Plaintiff to not execute or collect damages from Jones.  (*See* Pl.'s Resp. 17–18; *see generally* Def.'s Mot. SOF, Ex. 25, Assignment [ECF No. 79-25]).  Such an assignment is permissible under Florida law.  *See generally Wachovia Ins. Servs., Inc. v. Toomey*, 994 So. 2d 980 (Fla. 2008); *Rosen v.*

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

*Fla. Ins. Guar. Ass'n*, 802 So. 2d 291 (Fla. 2001).

### IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment **[ECF No. 74]** is **GRANTED in part and DENIED in part**.  Defendant's Motion for Final Summary Judgment **[ECF No. 78]** is **DENIED**.  The Court treats affirmative defenses 1–3, 6, 7, 9, 10, and 20 as specific denials; and grants summary judgment in favor of Plaintiff on affirmative defenses 4, 5, 8, 14, 18, 19, 21, 22, and 29–34.  Triable issues of fact remain regarding affirmative defenses 11–13, 15–17, and 23–28.

**DONE AND ORDERED** in Miami, Florida, this 8th day of August, 2023.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record