UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

**DENNIS SCOTT**,

    Plaintiff,

v.

**PAYCHEX INSURANCE AGENCY, INC.**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court upon Plaintiff, Dennis Scott's Motion to Exclude the Testimony of Defendant, Paychex Insurance Agency, Inc.'s Expert Witness, Todd Alford [ECF No. 73], filed on June 5, 2023. Defendant filed a Response [ECF No. 86] and accompanying Exhibits in Support [ECF No. 87] (hereinafter "Response Exhibits"); to which Plaintiff filed a Reply [ECF No. 90]. The Court has carefully considered the record, the parties' written submissions, and applicable law.

## I. BACKGROUND

The Court assumes the reader's familiarity with the case and provides only the necessary background relevant to this Motion. (*See* Aug. 8, 2023 Order [ECF No. 121] 2–5).[1] This case arises from an allegedly fraudulent or misleading Certificate of Insurance (the "COI") that Defendant issued to non-party James A. Jones, a general contractor. (*See generally* Second Am. Compl. ("SAC") [ECF No. 43]). Jones assigned to Plaintiff any claims it might have against Defendant arising from the COI; Plaintiff asserts those claims here. (*See* Aug. 8, 2023 Order 2).

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

1

Among its numerous defenses, Defendant contests whether Jones reasonably or justifiably relied on the COI and further argues that Jones himself was negligent regarding the use of the COI. (Resp. 3). To that end, Defendant intends to proffer Todd Alford at trial as an expert "to testify as to the best practices for general contractors in obtaining proof of workers compensation insurance from subcontractors, and verification of coverage, pursuant to industry standards." (Resp. Exs., Ex. 1, Expert Disclosures [ECF No. 87-1] 3).

Alford has worked in the construction industry for almost four decades and holds numerous construction and contracting certifications. (*See generally id.*, Ex. 2, Alford CV [ECF No. 87-2] 1–2). His Report contains a summary of five opinions, as well as additional information regarding evidence he considered and further explanation of his analysis. (*See generally* Mot., Ex. B, Report [ECF No. 73-2]). In sum, Alford reviewed documentary evidence from this case to offer opinions on the likely identity of Scott's employer at the time of the accident; the responsibilities of general contractors regarding obtaining and verifying workers' compensation insurance; and the interactions between insurers, insurance agents, and contractors. (*See* Report 1–3). Alford's opinions about the "best practices and applicable standard of care for general contractors" arise from his expertise. (Resp. 3 (citation omitted)).

Plaintiff moves to exclude Alford from testifying at trial under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702.[2]

---

[2] This Order and the parties' briefing are based solely on the contents of Alford's Report, because Plaintiff never deposed Alford, cancelling Alford's deposition just hours before it was scheduled to begin. (*See* Resp. 8). Plaintiff explains that he saw "no need" to take Alford's deposition, because the Report "only disclosed a series of inadmissible opinions[.]" (Reply 4 (alteration added)). Plaintiff received Alford's Report by, at the latest, May 9, 2023. (*See* Report 1; *see generally* May 5, 2023 Discovery Order [ECF No. 68]). Plaintiff did not move to exclude Alford until nearly a month later. (*See generally* Mot.).

## II. LEGAL STANDARD

The Federal Rules of Evidence govern the admissibility and proper scope of expert testimony. Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court explained that Rule 702 requires district courts to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. Courts must perform this "'gatekeeping'" function no matter how scientific, technical, or specialized the evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 589 n.7, 597; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)). "This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Id.* (emphasis, alterations, citation, and quotation marks omitted).

The Eleventh Circuit requires district courts to conduct a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

3

(3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*MidAmerica C2L Inc. v. Siemens Energy Inc.*, 25 F.4th 1312, 1326 (11th Cir. 2022) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).  The burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the testimony satisfies each prong.  *See Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1189, 1194 (11th Cir. 2010) (citing *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care*, 582 F.3d 1227, 1232 (11th Cir. 2009)).

Moreover, an expert's opinion may "embrace an ultimate issue" of fact, although it may not offer legal conclusions.  Fed. R. Evid. 704; *see Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may testify as to his opinion on an ultimate issue of fact . . . .  An expert may not, however, merely tell the jury what result to reach." (alteration added; citations omitted)).

That said, "*Daubert* 'is not intended to supplant the adversary system or the role of the jury.'"  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).  Rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Id.* (alteration adopted; quoting *Daubert*, 509 U.S. at 596).

### III. DISCUSSION

Plaintiff asks that the Court exclude Alford's testimony.  (*See generally* Mot.).  According to Plaintiff, Alford offers opinions he is not qualified to give and that are inappropriate lay opinions, are otherwise impermissible legal conclusions, and are unreliable.  (*See generally id.*).

4

The Court disagrees.

### a. Qualifications and Helpfulness

The Court first addresses Plaintiff's arguments that Alford is offering unqualified, improper lay opinions. (*See* Mot. 11–12; Reply 5, 9). In truth, this involves two separate questions. One question is whether Alford's opinions are helpful expert opinions to assist the jury, rather than improper lay testimony; the other is whether Alford is a qualified expert. The Court addresses each issue separately. Because Alford's qualifications establish why his testimony may be helpful to the jury, the Court begins with the latter.

#### 1. *Qualifications*

First, Alford's expert qualifications. Expert testimony is admissible only if given by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education[.]" Fed. R. Evid. 702 (alterations added). The plain language of Rule 702 makes clear that "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260–61 (alteration added; emphasis omitted). A non-scientific expert such as Alford "may be qualified based on his personal knowledge or experience without the necessity of establishing standards of scientific reliability, such as testability and peer review." *U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, No. 6:09-cv-1963, 2011 WL 3753581, at *3 (M.D. Fla. Aug. 25, 2011) (alteration adopted; quotation marks and citations omitted).

Assuming an expert is qualified, the expert may testify only about matters within the scope of the expert's expertise. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (explaining "the expert [must be] qualified to testify competently regarding the matters he intends to address" (alteration added; citations and footnote call number omitted)); *Feliciano v.*

5

*City of Mia. Beach*, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012) ("Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." (quotation marks and citations omitted)).

Plaintiff claims that Alford "is not qualified as an expert in employment law, taxation principles, or statutory analysis." (Reply 9). Perhaps that is so. But that is entirely irrelevant — Plaintiff slices the issues in this case, as well as Alford's proffered expertise, far too narrowly. *See United States v. Augustin*, 661 F.3d 1105, 1125 (11th Cir. 2011) ("We note that Federal Rule of Evidence 702 does not define an expert 'in a narrow sense.'" (citation omitted)); *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) ("An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand." (citing *Maiz*, 253 F.3d at 665, 669)).

Defendant has no intention of proffering Alford as an expert on any of the topics Plaintiff identifies (*see generally* Resp.), nor does Alford's Report reveal Alford's own intent to do so (*see generally* Report). Rather, Alford may offer opinions and testimony regarding "the best practices for general contractors in obtaining proof of workers' compensation insurance from subcontractors and verification of coverage, pursuant to industry standards" (Resp. 5) — matters for which he is qualified (*see generally* Alford CV; *see also* Resp. 5).

Not to belabor the point, but "Alford is a state of Florida Certified General Contractor, and past president and member of the Board of Directors for Association of Subcontractors." (Resp. 5). He has worked in the construction industry for almost four decades and holds numerous construction and contracting certifications. (*See* Alford CV 1–2). As such, he is qualified to offer opinions regarding the practices of general contractors in complying with industry standards;

6

standards which necessarily include reference to the Florida statutory provisions governing contractors and their employees' insurance. *See* Fla. Stat. ch. 440; (*see, e.g.*, Report 12–13 (describing Alford's conclusion that Jones "fail[ed] to meet the standard of care with respect to the requirements and obligations of a general contractor for workers compensation insurance" (alteration added)). Plaintiff's argument that Alford is only qualified to offer opinions on "highly technical construction issues" (Reply 9) — as opposed to opinions otherwise resulting from the expertise he has gained in a lifetime of work as a general contractor — simply strains credulity.

Plaintiff is welcome to present his concerns regarding the scope of Alford's expertise to the jury, but they do not warrant the Court's disqualification of Alford. *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (explaining that "so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility" (alteration adopted; citations and quotation marks omitted)).

### 2. *Lay Versus Expert Testimony*

Next, the Court considers the issue of lay and expert testimony — meaning, whether the testimony may be helpful to the jury. *See Frazier*, 387 F.3d at 1262–63. Expert evidence must "concern[] matters that are beyond the understanding of the average lay person." *Id.* at 1262 (alteration added; citation omitted). Expert testimony will not help the trier of fact, and is inadmissible, "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63 (citation omitted).

Plaintiff describes Alford's opinions as "boil[ing] down to arguments that Plaintiff did not work for [Central Florida Siding Pros] (an issue already decided by the [Judge of Compensation Claims (the "JCC")], or one the jury can decide alone based upon the evidence)[.]" (Reply 9

(alterations added); *see also* Mot. 2 n.2, 11–12). Both arguments fail to persuade.

First, Plaintiff's complaints regarding Alford's challenge to the JCC determinations carry little weight; indeed, not too long ago Plaintiff contested any "fast and loose attempt[s] to have this Court adopt findings from the administrative proceeding[.]" (Pl.'s Resp. to Def.'s Mot. to Dismiss [ECF No. 25] 8 (alterations added)). The Court has repeatedly told the parties that, while the JCC's findings may be submitted as part of the factual record to the jury, those findings are not dispositive of the issues in this case. (*See* Mar. 10, 2023 Order [ECF No. 35] 10–13; July 19, 2023 Order [ECF No. 112]; Aug. 8, 2023 Order 10–11, 31). Alford's testimony may assist the jury in reaching a decision on the claims in *this* case and against *this* Defendant, none of which were presented to the JCC — even if Alford's testimony and expertise provide some overlap with topics addressed by the JCC. (*See generally* Mot., Ex. 1, JCC Compensation Order [ECF No. 73-1]).

Second, Alford's testimony is relevant to material aspects of Plaintiff's case and Defendant's defense. For example, Plaintiff brings claims of negligent misrepresentation and the negligent-supply-of-information. (*See* SAC ¶¶ 44–51, 58–67). As the Court has already explained, both claims require Plaintiff to demonstrate Jones's justifiable reliance on the COI. (*See* Aug. 8, 2023 Order 24–27). In other words, a central question to these claims is whether Jones exercised the necessary reasonable diligence regarding his reliance on the COI. (*See id.*). Alford will address that question by opining on whether it was appropriate for Jones, as a seemingly experienced general contractor, to take no further action once he obtained the COI. (*See, e.g.*, Report 2–3, 12–13). These same questions will also be relevant to Defendant's comparative negligence defense, which Defendant asserts against all three of Plaintiff's negligence-based claims. (*See* Aug. 8, 2023 Order 18–19).

Further, as described, Alford's knowledge in the area of contractors and workers' compensation insurance exceeds the knowledge of the average layperson, and his background and experience establish his expertise in these areas. (*See generally* Alford CV). The responsibilities of general contractors and the requirements Florida law places upon them, including general contractors' responsibilities within Florida's workers' compensation insurance process, are plainly "matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262 (citation omitted).

Alford's testimony may assist the jury in better understanding whether Jones exercised reasonable diligence when he relied on the COI, among other issues. The Court will not exclude his opinions for an alleged lack of helpfulness to the jury. *See* Fed. R. Evid. 702.

b. **Impermissible Legal Conclusions**

The Court next turns to Plaintiff's argument that Alford offers only legal conclusions, rather than permissible expert opinions. (*See* Mot. 10–11). In fact, Plaintiff goes so far as to describe all of Alford's opinions as "attempting to interpret Section 440.02, Florida Statutes [and] the parties' respective duties under the statute," which "should be stricken because it invades the province of the Court." (*Id.* 10 (alteration added)). Plaintiff's hyperbole misreads the substance of the Report (*see generally* Report), and Alford's expected testimony, which will provide "insight and contextual understanding of general contractor and subcontractor best practices and standard[s] of care" beyond the jury's common knowledge." (Resp. 6 (alteration added)).

While an expert may give his opinion on an ultimate issue of fact under Federal Rule of Evidence 704, he "may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery*, 898 F.2d at 1541 (citations omitted). Therefore, in order to

9

protect the court's "exclusive prerogative" to "charg[e] the jury regarding the applicable law[,]" courts "must remain vigilant against the admission of legal conclusions[.]" *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128–29 (11th Cir. 2018) (alterations added; citations and quotation marks omitted).

Alford will not be providing legal conclusions, or opining on the "proper" or "correct" interpretation of Florida statutes. (*See generally* Report). "Rather, he merely reproduces the relevant section[s] of" the relevant statutes, to better frame his analysis of Jones and Scott's conduct. *Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. v. City of Mia. Beach*, No. 22-21213-Civ, 2023 WL 3258562, at *3 (S.D. Fla. Apr. 12, 2023) (alteration added; citation omitted); (*see, e.g.*, Report 8–9 (describing Alford's analysis of Scott's use of a certificate of selection to be exempt from workers' compensation claims under the governing statutory scheme at Florida Statute section 440.05(3))).

Throughout his Report, Alford applies the facts and evidence to provide an opinion as to whether, and how, Jones and Scott complied with the standard of care in their industry — which necessarily requires mention of certain Florida statutes. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-md-2885, 2021 WL 765019, at *41 (N.D. Fla. Feb. 28, 2021) ("Accordingly, a qualified expert may 'testify about industry standards of care, which may be reflected in regulations and statutes, and he can testify about how a reasonable operator in the industry would comply with these statutes and regulations.'" (citations omitted)). But these references "to a legal principle or assumption in an effort to place [Alford's] opinions in some sort of context will not justify the outright exclusion of the expert's [testimony] in its entirety." *Travelers Indent. Co. of Ill. v. Royal Oak Enters., Inc.*, No. 5:02-cv-58, 2004 WL 3770571, at *2 (M.D. Fla. Aug. 20, 2004)

Case 0:22-cv-62052-CMA Document 124 Entered on FLSD Docket 08/16/2023 Page 11 of 15

CASE NO. 22-62052-CIV-ALTONAGA/Strauss

(alterations added; footnote call number omitted)).

Plaintiff's own cases do not contradict this unremarkable principle — if anything, they are far more instructive as to why Alford's proffered testimony is admissible. (*See* Mot. 4; *see also* Resp. 7–8 (explaining same)). Take, for example, *Edward J. Seibert, A.I.A. Architect & Planner, P.A. v. Bayport Beach & Tennis Club Ass'n, Inc.*, 573 So. 2d 889 (Fla. 2d DCA 1990). In that case, "[t]he jury was asked to decide if [a building's] exits were designed in compliance with the [the city's] Standard Building Code." *Id.* at 891 (alterations added). During trial, a drafter of that code was permitted to testify as to the code's meaning and "official interpretation[;]" on appeal, the court explained that it was error to present "opinions as to how the code should be interpreted" *Id.* (alteration added).

Nevertheless, the court confirmed that expert testimony is admissible to "explain the character of an object in order to determine if it complies with a statute, ordinance, or code." *Id.* (citations omitted). And this is precisely what Alford's Report does — and his expected testimony may do — here. (*See generally* Report). Alford does not provide opinions as to the "official interpretation" of section 440. *Edward J. Seibert*, 573 So. 2d at 891. For example, Alford does not instruct the jury as to what "employee" *means* under section 440.02(15)(a), nor does he opine as how the jury should *interpret* the definition of employee. (*See* Report 4–5). Rather, he identifies the relevant statutory language and then *applies* the specific facts and evidence of this case "to determine . . . compliance with [the] statute" — here, whether Scott qualified as an employee. *Edward J. Seibert*, 573 So. 2d at 891 (alterations added); (*see* Report 4 (comparing available evidence to statute's requirements to support Alford's "position" as to whether Scott was an employee or independent contractor)).

In short, "Alford will not be offering any opinion on the proper way to interpret the law.

11

He will only be offering insight on industry practices, which, while implicating relevant statutes, require no legal analysis[.]" (Resp. 8 (alterations added); *see generally* Report). The Court will not exclude Alford's opinions as impermissible legal conclusions.

### c. Reliability

Last, the Court turns to the reliability of Alford's opinions. Plaintiff insists that Alford's opinions are unreliable because they rest "on a flawed and incomplete analysis" and "jump to conclusions based upon misconstrued and incomplete evidence[.]" (Reply 7 (alteration added; citation omitted); Mot. 12–13). Defendant responds that "Plaintiff is attacking the factual basis of [] Alford's opinion, and case law clearly establishes that the factual basis of an expert opinion goes to the credibility — not the admissibility — of an expert's testimony." (Resp. 8 (alteration added)). Defendant has the better argument.

Plaintiff appears to be attacking Alford's methodology. (*See* Mot. 12–13, Reply 7). Certainly, even if Alford is qualified, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261 (emphasis in original). Under Rule 702, expert testimony is admissible only if "the testimony is based on sufficient facts or data; . . . the testimony is the product of reliable principles and methods; and . . . the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d) (alterations added). Therefore, a witness "relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached . . . . The trial court's gatekeeping function requires more than simply taking the expert's word for it." *Frazier*, 387 F.3d at 1261 (alteration added; quotation marks, emphasis, and citations omitted).

The Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. While this inquiry is "flexible," the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95 (footnote call number omitted). "But conclusions and methodology are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Admittedly, the Report does a poor job explaining Alford's methodology for his opinions. (*See generally* Report). Alford's CV outlines his experience and training (*see generally* Alford CV), and the Report describes the evidence and statutes he considered (*see generally* Report); yet Alford for the most part fails to explain how he *applied* that knowledge to the facts — in other words, his methodology. Nevertheless, a court may draw inferences about a methodology from an opinion. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 n.8 (11th Cir. 2005); *see also Joiner*, 522 U.S. at 146. Furthermore, "*Daubert* is not a mechanism for grading expert reports[.]" *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 378 (N.D. Fla. 2017) (alteration added; citation and quotation marks omitted).

Because Alford's Report and CV describe his experience, education, training, and understanding of the work of general contractors and subcontractors — including workers' compensation insurance issues — it is reasonable to infer that Alford's methodology was the application of that knowledge to the case documents he reviewed. (*See generally* Report; Alford CV). Given the flexible reliability inquiry *Daubert* anticipated, *see* 509 U.S. at 594, the Court finds that Alford bases his opinions on application of his expertise and concludes his opinions are "reliable" for the purposes of admissibility under Rule 702.

The specifics of Alford's methodology aside, Plaintiff further attacks the Report as unreliable because it is "based on a flawed and incomplete analysis" and "jump[s] to conclusions on bits of piecemeal evidence provided by defense counsel, but ignore competing evidence to the contrary[.]" (Mot. 12 (alterations added)). The Court agrees with Plaintiff in part; the substance of Alford's opinions leaves something to be desired. (*See* Mot. 5–10; Reply 7–9). From a review of Alford's "Summary of Opinions" (Report 1), it appears that opinions one and two primarily rely on disputed facts that Alford considered; opinions three and four cursorily describe the interactions of general contractors, subcontractors, employers, and employees in the context of workers' compensation proceedings; and opinion five describes Jones's alleged failure to adhere to the best practices of general contractors (*see id.* 1–3).

But "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8*, *Inc.*, 326 F.3d at 1341; *see also In re Trasylol Prods. Liab. Litig.*, No. 08-md-01928, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." (citation and quotation marks omitted)). Rather, the persuasiveness of Alford's proffered opinions will be assessed by the jury and tested in the courtroom. *See Quiet Tech. DC-8*, *Inc.*, 326 F.3d at 1341.

Plaintiff seems well-prepared to rebut the substance of Alford's opinions — the bulk of Plaintiff's Motion details multiple purported flaws and deficiencies in Alford's analysis. (*See* Mot. 5–10). Further, Plaintiff intends to offer the testimony of his own rebuttal expert. (*See* Pl.'s Unilateral Pretrial Stip., Ex. 2, Pl.'s Witness List [ECF No. 105-2] 3; *see also* Reply 10). This anticipated "vigorous cross-examination [and] presentation of contrary evidence" to Alford's opinions is the "appropriate means of attacking [his] shaky but admissible evidence" — not this

14

Motion. *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1346 (alteration adopted; other alterations added; quotation marks omitted; quoting *Daubert*, 509 U.S. at 596).

In sum, Alford considers evidence from this case, applies his years of experience, and reaches sufficiently reliable opinions which may be helpful to the jury. (*See generally* Report); Fed. R. Evid. 702. Plaintiff will have ample opportunity to attack those opinions at trial.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Exclude the Testimony of Defendant's Expert Witness, Todd Alford **[ECF No. 73]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 16th day of August, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record